Syllabus.

THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY

*v.*

LYCURGUS K. AVERY.

*Filed at Springfield March 26, 1884.*

1. INSTRUCTION—*construed, as whether assuming a fact or singling out certain facts.* In an action on the case against a railway company, to recover for a personal injury by its employee, based on alleged negligence in using a car the couplings of which were out of repair, the court instructed the jury that if they believed, from the evidence, that the car so used was the property of a company other than the defendant, and that such car was at the time of the alleged injury, and for several months next prior thereto had been, and was, regularly and daily running into and out of defendant's yard by the permission of the defendant, and that at the time of the alleged injury, and for several months next prior thereto, the said car was regularly and daily controlled and handled in the defendant's yard by the defendant, with its own engine and employees, then it was the duty of the defendant to use ordinary diligence to keep said car in a reasonably safe condition for handling, or else require and see to it (if by the use of ordinary diligence the defendant could do so) that such car was kept by its owners in such reasonably safe condition: *Held,* that the objection to the instruction that it assumed as a fact that the car being out of repair, and being permitted to come into the yard in an impaired condition, was the cause of the injury to plaintiff, was not well founded. Nor was it subject to the objection of singling out and giving undue prominence to a part of the facts in the case, and in omitting reference to any care as required of the plaintiff.

2. Where the purpose of an instruction is simply to define the duty of the defendant arising out of facts supposed, and it does not purport to contain a complete hypothesis on which a plaintiff suing for an injury caused by alleged negligence can recover, it is not necessary in such instruction to refer to the duty or supposed negligence of the plaintiff.

3. SAME—*confining the charge to the negligence alleged.* In a suit for injury arising from negligence, when there is no proof of any other negligence than that alleged in the declaration, an instruction stating what is negligence is not erroneous, in not confining the right of recovery to the negligence alleged in the declaration.

4. SAME—*modification expressing same idea more fully.* An instruction to the effect that a master is not responsible for an injury to an employee for defects in the cars used, caused by wear and tear, until notified of such defects, or has had time and opportunity to learn of such defects, and to have the same repaired, was modified by adding the words, "or such defects shall have existed for such a length of time as to give the proper authorities oppor-

tunity to learn of such defect in the due discharge of their duties:" *Held,* that there was no error in the modification, it being but the expression of the idea in the instruction, as drawn, in a more wordy form.

5. MASTER AND SERVANT—*what hazard the servant takes.* The negligence of fellow-servants is one of the ordinary perils of the service which one takes the hazard of in entering into any employment. But the master's own duty to the servant is always to be performed. The neglect of that duty is not a peril which the servant assumes.

6. Care in supplying safe instrumentalities in the doing of the work undertaken by the servant is a duty the master owes to the servant, and when the performance of that duty is devolved upon a fellow-servant, the master's responsibility in respect of that duty still remains. In such case the negligence of the fellow-servant is the master's neglect of duty.

7. SAME—*railway corporation using cars of other companies must see that they are safe, in respect to its employees.* A railway corporation, with respect to the cars of other companies which it allows to come into its yard, and which, while there, are to be moved and handled by its employees, is bound to use due diligence and care in seeing that the cars are safe to be so handled by its servants, and such railway corporation can not divest itself of this duty to its servants for their safety and protection, by a contract with such other companies whose cars are used that the latter shall keep them in repair. The general rule is, that the employer is bound to use due diligence in providing and maintaining safe machinery and instrumentalities to be handled and used by his employees, without regard to the ownership of the same.

8. NEGLIGENCE—*instruction as to contributory, held bad.* In an action to recover damages growing out of negligence of a railway company in the use of a freight car defective in the coupling apparatus, the court was asked to instruct the jury that although they believed, from the evidence, that the plaintiff (an employee to couple cars) had no actual knowledge of the defect in the coupling apparatus of the car, still he was not thereby excused or exempted from ordinary care and diligence; and if they believed, from the evidence, that the plaintiff so far contributed by his own negligence or want of care and caution, as, but for such negligence, the injury would not have happened, they should find for the defendant: *Held,* that the instruction was faulty in seeming to import that any negligence, even if slight, on the part of the plaintiff, contributing to the injury, might defeat a recovery, and ought to have been qualified by the word "ordinary," so as to read that the plaintiff "so far contributed to the injury by his own negligence or want of *ordinary* care and caution."

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Adams county; the Hon. JOHN H. WILLIAMS, Judge, presiding.

Mr. J. F. Carrott, for the appellant:

That a servant can not recover of his master where his own want of care contributed to the injury, or where by the exercise of ordinary care and prudence he might have avoided it, may now be regarded as a rule of law completely established. *Illinois Central R. R. Co.* v. *Patterson*, 69 Ill. 650; *Toledo, Wabash and Western Ry. Co.* v. *Asbury*, 84 id. 430; *Toledo, Wabash and Western Ry. Co.* v. *Black*, 88 id. 112; *Austin* v. *Chicago, Rock Island and Pacific R. R. Co.* 91 id. 35; *Pennsylvania Co.* v. *Hankey*, 93 id. 570; *Ballou* v. *Chicago and Northwestern R. R. Co.* 54 Wis. 257; *Michigan Central R. R. Co.* v. *Smithson*, 45 Mich. 212; *Wabash* v. *St. P. and D. R. R. Co.* 27 Minn. 369.

An employee, by entering the service, takes the risk of its ordinary hazards and dangers, whether from the carelessness of co-employees, or the ordinary dangers in the use of machinery and appliances used in the business. *Lovell* v. *Howell*, 1 C. P. Div. L. R. 161; *Woodley* v. *M. D. Ry. Co.* 2 Ex. Div. L. R. 384; *Chicago and Northwestern R. R. Co.* v. *Ward*, 61 Ill. 130; *Toledo, Wabash and Western Ry. Co.* v. *Black*, 88 id. 112; *Richardson* v. *Cooper*, id. 270; *Clark* v. *Chicago, Burlington and Quincy R. R. Co.* 92 id. 46; *Smith* v. *Potter*, 46 Mich. 258; *Flannagan* v. *Chicago and Northwestern R. R. Co.* 50 Wis. 462; *Kelley* v. *Chicago, Milwaukee and St. Paul R. R. Co.* 53 id. 74.

Injury from coupling and uncoupling cars is a risk incident to the employment of a switchman and night foreman in a railroad yard. *Lyon* v. *D. L. and L. M. R. R. Co.* 31 Mich. 429; *Michigan Central R. R. Co.* v. *Austin*, 40 id. 249; *Day* v. *T. C. S. and D. Ry. Co.* 42 id. 523; *Chicago and Northwestern R. R. Co.* v. *Ward*, 61 Ill. 130; *Toledo, Wabash and Western Ry. Co.* v. *Black*, 88 id. 112.

One servant can not maintain an action against the common master for an injury caused by the carelessness or negligence of another engaged in the same service. Pierce

on Railroads, (2d ed.) 359; *Illinois Central R. R. Co.* v. *Cox,* 21 Ill. 23; *Chicago and Alton R. R. Co.* v. *Murphy,* 53 id. 336; *St. Louis and Southeastern Ry. Co.* v. *Britz,* 72 id. 256; *Toledo, Wabash and Western Ry. Co.* v. *Durkin,* 76 id. 395; *Valtez* v. *Ohio and Mississippi Ry. Co.* 85 id. 500; *Richardson* v. *Cooper,* 88 id. 270; *Clark* v. *Chicago, Burlington and Quincy R. R. Co.* 92 id. 43; *Indianapolis and St. Louis R. R. Co.* v. *Morganstern,* 106 id. 216.

Where a servant who is injured, either through the carelessness or incompetency of a fellow-servant, or through any defective machinery furnished, had the same knowledge or means of knowledge as the master, he can not maintain an action for such injury, but will be held to have assumed such risks. *Skipp* v. *E. Co. R. R. Co.* 9 Exch. 211; *Williams* v. *Clough,* 3 H. & N. 258; *Dynen* v. *Leach,* 40 Eng. L. & Eq. 491; *Hughes* v. *W. St. P. R. R. Co.* 27 Minn. 147; *Walsh* v. *St. P. and D. R. R. Co.* id. 369; *Clark* v. *St. P. and S. C. R. R. Co.* 28 id. 128; *Hayden* v. *Sm. Manf. Co.* 29 Conn. 559; *Baylor* v. *D. L. and W. R. R. Co.* 40 N. J. L. 23; *Perigo* v. *Chicago, Rock Island and Pacific R. R. Co.* 52 Iowa, 276; *Chicago and Northwestern R. R. Co.* v. *Donahue,* 75 Ill. 106; Pierce on Railroads, (2d ed.) p. 379, and cases cited.

Messrs. WHEAT & MARCY, for the appellee:

Avery had the right to rely upon it that the duties of inspection and repair as to this car had been performed, and to handle it as sound when presented to him as such. *Chicago and Northwestern R. R. Co.* v. *Swett,* 45 Ill. 203; *Illinois Central R. R. Co.* v. *Welch,* 52 id. 183; *Chicago and Alton R. R. Co.* v. *Pondrom,* 51 id. 338; *Chicago and Alton R. R. Co.* v. *Wilson,* 63 id. 172; *St. Louis, Vandalia and Terre Haute R. R. Co.* v. *Dunn,* 78 id. 202; *Goodfellow* v. *Railroad Co.* 106 Mass. 462; *Ford* v. *F. R. R. Co.* 110 id. 260; *Porter* v. *H. R. R. Co.* 60 Mo. 162; *Sleeper* v. *Sandown,* 52 N. H. 252.

He was not bound to look for dents in the dead-wood, or to make inspection. Even if, under the circumstances, he had forgotten or overlooked, for the moment, a known or visible peril, it would not have been negligence. *Snow* v. *Housatonic R. R. Co.* 8 Allen, 441; *Chicago and Northwestern R. R. Co.* v. *Jackson,* 55 Ill. 492; *Dorsey* v. *Phillips Co.* 42 Wis. 583; *Chicago and Iowa R. R. Co.* v. *Russell,* 91 Ill. 302; *Wedgewood* v. *Chicago R. R. Co.* 41 Wis. 478; *Chicago, Burlington and Quincy R. R. Co.* v. *Gregory,* 58 Ill. 286; *Chicago and Northwestern R. R. Co.* v. *Taylor,* 69 id. 462; *Illinois Central R. R. Co.* v. *Welch,* 52 id. 186; *Cooms* v. *N. B. Co.* 102 Mass. 572; *Spanny* v. *Mill Co.* 62 Maine, 420; *Toledo, Wabash and Western Ry. Co.* v. *Fredericks,* 71 id. 296; *Fairbank* v. *Haentzche,* 73 id. 236.

Peril occasioned by negligence of defendant, in respect of supplying safe instrumentalities, is not one of the "ordinary risks" assumed by the employee. *Hough* v. *T. P. R. R. Co.* 100 U. S. 213; *Cayzer* v. *Taylor,* 10 Gray, 282; *Gregory's case,* 58 Ill. 284; *Swett's case,* 45 id. 201; *Ford's case,* 110 Mass. 260; *Flanigan's case,* 77 Ill. 371; *Abend's case,* 107 id. 50.

The employer is bound to use due diligence in providing and maintaining safe machinery to be handled by its employees. *Swett's case,* 45 Ill. 201; *Shannon's case,* 43 id. 345; *Jackson's case,* 55 id. 496; *Thompson's case,* 56 id. 141; *Conroy's case,* 78 id. 560; *Estes' case,* 96 id. 472.

The diligence required in this regard, both as to passengers and employees, is the highest consistent with the operation of the road. *Chicago and Alton R. R. Co.* v. *Shannon,* 43 Ill. 345; *Toledo, Peoria and Warsaw R. R. Co.* v. *Conroy,* 61 id. 163; *Chicago and Alton R. R. Co.* v. *Platt,* 89 id. 143.

The defendant was bound to adopt and enforce proper rules and regulations for the safety of its employees in respect to all cars allowed to run upon its line or in its yards. *Chicago, Burlington and Quincy R. R. Co.* v. *George,* 19 Ill. 517; *Chi-*

*cago and Northwestern R. R. Co.* v. *Taylor,* 69 id. 465; *Chicago, Burlington and Quincy R. R. Co.* v. *McLallen,* 84 id. 114.    And the burden of proof as to this is on the defendant. *Pittsburg and Ft. Wayne R. R. Co.* v. *Powers,* 74 Ill. 344.

Mr. Chief Justice Sheldon delivered the opinion of the Court:

This was an action on the case, brought by Lycurgus K. Avery, against the Chicago, Burlington and Quincy Railroad Company, to recover damages for an injury sustained by plaintiff when attempting to uncouple a car belonging to the Keokuk, St. Louis and Northwestern Railroad Company, then in the railroad yard of defendant, at Quincy.    The declaration charges that plaintiff was an employee of defendant in its railroad yard at Quincy, and that, as such, it was his duty to couple and uncouple cars; that defendant permitted a certain car, known as "way car No. 3," to come into its railroad yard, and of its negligence permitted the car to be used and operated on its railroad with the appliances for coupling and uncoupling so broken as to be dangerous to one having occasion to couple or uncouple the car; that on the evening of December 16, 1879, while plaintiff was attempting to uncouple the car, his right thumb was caught and crushed by and between the dead-wood and coupling-pin of the car; that the injury was caused by the follower of the draw-bar, by which cars are coupled, being so broken that the draw-bar pushed back under the car, so as to bring the coupling-pin in contact with the dead-wood of the car.    Plaintiff recovered, and on appeal to the Appellate Court for the Third District the judgment was affirmed, and defendant appeals to this court.

It appears that this way car No. 3 belonged to the Keokuk, St. Louis and Northwestern Railroad Company, and was used by its employees engaged in running the train, but at the time of the accident it was being handled by defendant's employees.    All the different railroads coming into Quincy,

some six in number besides defendant's, run their engines and trains into this railroad yard, and while there are moved and handled by defendant's employees. Each of the different companies attends to and keeps in repair its own rolling stock, engines, cars, etc., and the cars, engines, etc., of other companies are not under the control of defendant, and it does not make repairs for other companies unless requested to do so, each company doing its own repairing. Plaintiff had been engaged in railroad business eighteen years or more, as brakeman, switchman and conductor, and had worked for defendant, as switchman and night foreman in this railroad yard at Quincy, for five years in succession next prior to December 16, 1879, the time of the accident. His duties were to couple and uncouple cars, switch trains that came into, and make up trains that went out of, the yard. He had five switchmen, and the engineer and fireman, under his control. This train of the Keokuk, St. Louis and Northwestern Railroad Company had been running in and out of the yard a year and a half or two years, and this way car a month and a half or two months. The train ran from Quincy to Hannibal and return. The follower of this way car was broken in the railroad yard at Hannibal, Mo., on the 11th or 12th of December, 1879, and came into and ran out of the yard at Quincy every day, in this broken condition, until plaintiff was hurt.

As respects the facts of the case, the finding of the Appellate Court upon them is conclusive on us, and we have only to do with questions of law. All such that are presented here respect the instructions to the jury.

The circuit court gave to the jury the following instructions on the part of plaintiff:

"1. If the jury believe, from the evidence, that way car No. 3, mentioned in the testimony in this case, was the property of a company other than the defendant, and that such

way car, at the time of the alleged injury to the plaintiff, and for several months next prior thereto, had been, and was, regularly and daily running into and out of the defendant's yard at Quincy, Illinois, by the permission of the defendant, and that at the time of said alleged injury, and for several months next prior thereto, the said way car was regularly and daily controlled and handled in the defendant's said yard by the defendant, with its own engine and employees, then it was the duty of the defendant to either use ordinary diligence to keep said car in a reasonably safe condition for handling, or else to require and see to it (if by the use of ordinary diligence the defendant could do so) that such car was kept by its owners in such reasonably safe condition.

"2.    If the jury believe, from the evidence, that the alleged injury to the plaintiff was occasioned by negligence of any of the officers or employees of the defendant not in the same line of duty with the plaintiff, then such negligence would be, in contemplation of law, negligence of the defendant."

The objection to the first instruction, that it assumes as a fact that the car being out of repair, and being permitted to come into the yard in this impaired condition, was the cause of the injury to plaintiff, is evidently not well founded. Nor do we conceive the instruction liable to the further objection urged, that it singles out and gives undue prominence to a part of the facts in the case, and omits reference to any care as required on plaintiff's part. The purpose of the instruction is simply to define the duty of the defendant arising out of the facts supposed. It does not purport to contain a complete hypothesis on which plaintiff could recover, and it was not necessary to refer to the duty of the plaintiff.

It is objected to the second instruction that it is too broad, in that it does not confine the right of recovery to the negligence alleged in the declaration. As applied to the facts,

there not being a particle of evidence of any other negligence than that alleged in the declaration, the instruction can not be said to be erroneous in the respect named. Abstractly considered, the instruction may not be correct in admitting the idea of defendant's liability for the negligence of a fellow-servant of plaintiff not in the same line of duty with him. The negligence of fellow-servants is one of the ordinary perils of the service which one takes the hazard of in entering into any employment. But the master's own duty to the servant is always to be performed. The neglect of that duty is not a peril which the servant assumes, and where the performance of that duty is devolved upon a fellow-servant, the master's liability in respect thereof still remains. Care in the supplying of safe instrumentalities in the doing of the work undertaken is the duty of the master to the servant,—hence the rule of non-liability on the part of an employer for the negligence of a fellow-servant has no application in this case, where the negligence in question is the master's neglect of duty in the providing of safe appliances.

The objections made to the third, fourth and fifth instructions are of a similar character with the ones above named, and we consider them as sufficiently answered in what has been said.

It is insisted that the seventeenth instruction asked by defendant, as modified by the court, and so given, was inaccurate. The instruction as asked was:

"That a railroad company is not responsible for injuries to its employees, caused by the usual and ordinary wear and tear of cars, until it has been notified of the defects caused by such wear and tear, or has had time and opportunity to learn of such defects, and to have the same repaired," etc.

The court modified the instruction by adding thereto the following: "Or such defects shall have existed for such a length of time as to give the proper authorities opportunity

to learn of such defect in the due discharge of their duties." The modification only enlarges on the effect of the length of the time of the continuance of the defect, in implying notice. It seems to be but the expression of the idea in the instruction as drawn, in a more wordy form.

The defendant asked the following instruction:

"26.   The court further instructs the jury, that although they may believe, from the evidence, that the plaintiff had no actual knowledge of the defect in the coupling apparatus of the car in question, still he is not thereby excused or exempted from ordinary care and diligence, and if the jury believe, from the evidence in this case, that the plaintiff himself so far contributed to his injury by his own negligence, or want of care and caution, as but for such negligence the injury would not have happened, then the court instructs the jury they should find for the defendant."

But the court refused to give said instruction as asked, and modified it by adding thereto the following:   "Unless they further believe that the negligence of the plaintiff was slight in itself, and slight as compared with the negligence, if any, of the defendant, and that the injury complained of was caused by the negligence of the defendant, and that such negligence of the defendant was gross,"—and then, against the objection of the defendant, gave said instruction to the jury, as modified, and the defendant excepted.

It is said this instruction should have been given as originally drawn.   We think, as drawn, it was faulty, in seeming to import that any negligence, even if slight, on the part of the plaintiff, contributory to the injury, might debar a recovery, whereas it should have been qualified by the word "ordinary," so as to read that the plaintiff "so far contributed to his injury by his own negligence or want of *ordinary* care and caution."   It is said that the words "want of care," when used in instructions to a jury, mean want of

reasonable care, and proper care, and that defendant was entitled to a distinct instruction on this point of want of ordinary care in the plaintiff. The jury might not have understood "want of care" as meaning "want of ordinary care," and in other instructions given the jury were abundantly informed of the necessity of ordinary care on the part of the plaintiff. No objection otherwise is taken to the modification.

It is insisted that the twenty-ninth instruction asked by defendant, and refused, stated the law correctly, and should have been given. That instruction was as follows:

"29. If you believe, from the evidence, that on the 16th day of December, 1879, other railroad companies were, and for some time previous thereto had been, running trains into the railroad yard of the defendant at Quincy, and that by the arrangement between the defendant company and said other companies, including the Keokuk and St. Louis Railroad Company, each company was to keep its own rolling stock, engines, cars, etc., in repair, and that neither company was under any obligation to make repairs upon the rolling stock, engines, cars, etc., of any other one of said companies, and that this arrangement was known to the plaintiff while he was in the employ of the defendant company, and prior to the time of the injury complained of, then the court instructs you that the danger of being injured by the car of such other companies coming into and being in the railroad yard of the defendant company, out of repair and in a damaged condition, was one of the dangers and perils of the service which the plaintiff assumed; and if you further believe, from the evidence, that the injury sued for in this case was received by the plaintiff while he was attempting to uncouple a car belonging to the Keokuk and St. Louis Railroad Company, which said company had brought into the railroad yard of the defendant company, out of repair and in a damaged condition, then you will find a verdict for the defendant."

The general rule is unquestionable, that the employer is bound to use diligence in providing and maintaining safe machinery and instrumentalities to be handled by the employee. We think this obligation rested upon defendant in respect of the cars of other companies which were permitted to come into its yard, as this one was, and which while there were moved and handled by defendant's employees, and that defendant could not divest itself of this responsibility to its own employees by such a contract with another company, as supposed in the instruction.

A general objection is made that all the instructions asked by defendant, but refused, should have been given, but nothing specific is pointed out in respect of any other one, and in looking them over we do not discover any error in the refusal.

Finding no substantial error in the record, the judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*