## A. E. WELLS

*v.*

## THOMAS J. O'HARE, Admr.

*Opinion filed April 20, 1904—Rehearing denied June 8, 1904.*

1. PLEADING—*declaration should allege the negligence relied upon.* A declaration in an action to recover for defendant's negligence must allege the negligent act or omission relied upon as the basis of the right of recovery.

2. MASTER AND SERVANT—*negligence of fellow-servant is an ordinary risk of the employment.* The negligence of a fellow-servant is one of the ordinary risks of the employment assumed by a servant entering the same, although the master must use reasonable care to employ none but competent servants.

3. SAME—*master not required to discover and prevent risks of negligence of competent fellow-servant.* If the master has exercised reasonable care to employ none but competent servants, it is not his legal duty to discover and prevent negligent acts or omissions of such servants in order to constitute the risks of such acts or omissions one of the ordinary risks assumed by their fellow-servants.

4. TRIAL—*judge should suspend proceedings if he leaves the court room.* If the trial judge finds it necessary to leave the court room during the progress of a trial he should suspend judicial proceedings until he returns, and the practice of leaving the court room during the argument is not approved, notwithstanding no reversible error results in the particular case.

*Wells v. O'Hare,* 110 Ill. App. 7, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

O. W. DYNES, for appellant.

ALEXANDER SULLIVAN, (FRANCIS F. WOOLLEY, of counsel,) for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court for the First District affirming a judgment in the sum of $2500 entered in the circuit court of Cook county

against the appellant and in favor of the appellee, as administrator of the estate of Michael Corbett, deceased. The declaration was in case, and claimed damages for the wrongful death of plaintiff's intestate by the alleged negligent act of defendant, and averred "that the defendant, regardless of his duty in the premises, carelessly and negligently threw or caused to fall from a great height, to-wit, forty feet above where the plaintiff was then and there lawfully prosecuting his labor, in the exercise of all due care and caution for his own safety, some hard substance, to-wit, a brick, down to and upon said deceased, whereby and by means whereof the death of the said Michael Corbett was then and there caused."

At the time of the accident the deceased was a common laborer in the employ of appellant, Wells, who was a general contractor in the city of Chicago, and had the contract for the mason work on a nine-story brick building located in said city. For the purpose of carrying the brick and mortar to the different stories or floors as the building went up, a temporary device such as is used by builders, called a "hoist," was put in, which consisted of two rough elevator platforms traveling up and down in vertical shafts, one platform counter-balancing the other, so that when one was at the bottom of the shaft the other was at the top. The cable attached to either platform passed over sheaves at the top and was operated by steam power, and was so arranged that it could be adjusted to the various floors,—that is, when it was needed to hoist material to the second floor the platforms ascended to that floor and no farther, and as the work progressed to the third floor the cables were again lengthened so that they would extend to the fourth floor, and so on with each succeeding floor. On the day prior to the accident the mason work on the eighth floor had been completed and it became necessary to adjust the hoist to the ninth floor. In order to do so one of the platforms was drawn up to that floor and a plank placed

under it to support it, and after the cable had been adjusted the plank was left under the platform until the next morning. An employee of the defendant, named Sullivan, was engaged in operating the hoist at the top, and on the night before the accident the foreman ordered him to put the plank under the platform to keep it in position while the cables were being adjusted. In doing so he placed one or more bricks under the south end of the plank in order to level it up. These bricks rested on a tile floor about level with the edge of the shaft, some two feet from its south edge or side. At the time of the accident the foreman of appellant ordered Corbett, the deceased, to assist at the bottom of the shaft in pulling the cable, the object being to raise the platform above so the plank could be removed. Corbett, in obedience to the order, with one or two other employees stepped into the shaft, took hold of the cable and pulled down on it, while Sullivan above took hold of the end of the plank and pulled it out. At the same time a brick fell from some point above, striking the deceased on the head, inflicting a fatal wound. Plaintiff's theory of the case, on the evidence, is, that the brick which fell from above, causing the injury, was caused to fall through the negligent act of the employee, Sullivan, in this: that he negligently omitted to take the brick from under the plank before attempting to draw the plank from across the elevator shaft, and that Sullivan, in removing the plank, drew or "scraped" the brick which was under it, into the shaft, from whence it fell to the bottom and struck and killed Corbett. There was no direct proof that the brick was caused to fall by Sullivan.

It was insisted by counsel for the appellant, that, even conceding that the plaintiff's intestate lost his life through the negligent act of Sullivan, still the appellant was not liable because the relation existing between the deceased and Sullivan at that time was that of fellow-servants, and that the deceased assumed the risk and

danger of receiving an injury through the negligence of those with whom he should be engaged at work as a fellow-servant. The declaration did not allege that Sullivan caused the brick to fall, and there is no averment therein that Sullivan was incompetent or that the appellant was guilty of any negligence in employing him, nor did anything appear in the proof tending to show that Sullivan was incompetent. A declaration to recover for negligence must allege the negligence or omission relied upon to give the right to recover. If the alleged negligence on which recovery of damages is sought is that an employer negligently employed an incompetent fellow-servant, the declaration should so aver. (13 Ency. of Pl. & Pr. 899.) On this branch of the case the issue, then, was whether the relation of fellow-servant existed between the deceased and Sullivan. The evidence was such that the Appellate Court was moved to declare in its opinion that whether these workmen were fellow-servants was "a matter of very grave doubt," and this view is, in our opinion, the most favorable to the cause of the appellee that could be drawn from the testimony. In a case so close on the facts it is indispensable to the maintenance of the verdict and judgment that the instructions given to the jury relative to the legal principles involved in the determination of the issue should be free from any inaccurate direction which may have influenced the jury improperly against the appellant.

At the request of the appellant the court gave to the jury the following instruction:

"The court instructs the jury that, as a matter of law, the negligence of a fellow-servant is one of the risks of the employment assumed by a servant, and if you believe, from the evidence, that the injury to the deceased in this case was caused solely by the negligent act of a fellow-servant, then it is your duty to find the defendant, A. E. Wells, not guilty."

Under the pleadings and proof in the case this instruc-
tion correctly stated the rule of law as to the risks as-
sumed by the deceased. In *Chicago, Burlington and Quincy
Railroad Co.* v. *Avery*, 109 Ill. 314, we said (p. 322): "The
negligence of fellow-servants is one of the ordinary perils
of the service which one takes the hazard of in entering
into any employment." In *Toledo, Wabash and Western
Railway Co.* v. *Durkin*, 76 Ill. 395, we said (p. 397): An em-
ployee "undertakes to run all the ordinary risks incident
to the employment, including his own negligence or un-
skillfulness; and this includes the risk of occasional neg-
ligence or unskillfulness of his fellow-servants engaged
in the same line of duty, or incident thereto, provided
such fellow-servants are competent and skillful to dis-
charge the duty assigned them." That such risk is as-
sumed by an employee is declared in 12 Am. & Eng. Ency.
of Law, (2d ed.) 902, on the authority of many judicial
decisions cited in note 4.

But we think the appellant has just ground to com-
plain the jury were not permitted to guide their deliber-
ations by this instruction or to apply the principle there
announced to the evidence produced in the cause. At
the request of the appellee the court gave to the jury
a further instruction relative to the assumption by the
deceased of the usual and ordinary risks of his employ-
ment, which cast upon the appellant, as the common
master, a greater burden of diligence than the law re-
quired of him, and imposed upon him an obligation to
take precautions beyond any duty legally devolving up-
on him. The instruction referred to read as follows:

"The jury are instructed that the terms 'ordinary risks
or hazards of deceased's employment,' as used in these
instructions, mean such risks as are usual and ordinary
in such employment after the employer has taken rea-
sonable care to discover and prevent such risks."

The theory upon which the appellee sought a verdict
was, that Sullivan, when attempting to remove the plank

on which the elevator had rested on the eighth floor, negligently omitted to take from beneath it the brick which he had on the evening before placed under the plank, and that in removing the plank he scraped or drew the brick into the shaft, and it fell from thence to the bottom of the shaft and struck and killed the deceased. If Sullivan was a fellow-servant of the deceased the verdict of the jury, under the pleadings and proof, should have been for the appellant, for the reason the law did not require the appellant to answer for the negligence of a fellow-servant of the deceased, there being neither allegation nor proof that the master had not exercised ordinary care in selecting Sullivan for the work he was engaged in doing; or, in other words, the rule of law is that the deceased assumed the danger of injury caused by any negligence of Sullivan as one of the risks of his employment, and should look to Sullivan, and not the common employer of both, for any damages arising from the negligence of Sullivan. The jury would, however, understand from the instruction so given at the request of the appellee, that though Sullivan and the deceased were fellow-servants, yet the deceased did not assume the risk of receiving injury because of the alleged negligent omission of Sullivan to take away the brick before attempting to draw away the plank from across the shaft, unless it appeared in the proof that the appellant had taken steps to discover that the brick had been left under the plank, and had taken some precautions to prevent the brick from being dragged into the shaft in an effort to remove the plank. The requirement of the instruction given for the appellee, that the employer should be required to take "reasonable care to discover and prevent such risk," could convey no other meaning to the minds of the jurors. This is to make the common master liable for the negligent acts of the fellow-servant of one who is injured unless the master can show he could not have anticipated that the fellow-servant would be guilty

of the negligent act or omission, and could not, by some reasonable precaution, have prevented the doing of the negligent act or compelled the performance of the omitted duty. If the master has performed his own duty toward his servant he is not responsible for the injuries arising wholly from the negligence of a fellow-servant of the injured servant. One of the duties which the master owes to an employee is to use ordinary or reasonable care and diligence to select and retain in his employ such other servants as are competent. In *Illinois Central Railroad Co.* v. *Cox*, 21 Ill. 20, we said (p. 26): "We think the doctrine established by these cases the correct doctrine. It is right and proper that one servant should not recover against the common master for the carelessness of his fellow-servant, provided competent servants have been selected by the master." In *Consolidated Coal Co.* v. *Haenni*, 146 Ill. 614, we said (p. 622): "Among the risks incident to the business which the servant is understood to take upon himself by the contract of hiring, are those arising from the careless or wrongful acts of fellow-servants. (Wood on Law of Master and Servant, sec. 427.) But the assumption by the servant of risks resulting from the negligence of his fellow-servants is subject to the implied undertaking of the master that he will use all reasonable care to furnish safe premises, machinery and appliances, and to employ competent and prudent co-employees.—*Pittsburg, Cincinnati and St. Louis Railway Co.* v. *Adams*, 105 Ind. 151; Wood on Law of Master and Servant, secs. 329, 416." In *Western Stone Co.* v. *Whalen*, 151 Ill. 472, we said (p. 484): "The servant, upon entering the employment, is held to assume the natural and ordinary risks incident to the business in which he engages, and impliedly contracts that the master shall not be liable for injuries consequent upon the negligence of a fellow-servant in the employment of whom the master has exercised due and proper care." In 12 Am. & Eng. Ency of Law, (2d ed. p. 897,) the rule is stated as

follows: "Where the master uses due diligence in the selection of competent and trusty servants and furnishes them with suitable means to perform the service in which he employs them, he is not answerable, where there is no countervailing statute, to one of them for an injury received by him in consequence of the carelessness of another while both are engaged in the same service." It was therefore plainly erroneous to say to the jury, as, in effect, did the instruction under consideration, that the appellee could recover for the injury occasioned by the negligent act of Sullivan, even though the deceased and Sullivan were fellow-servants, unless the appellant, the common master of both, had taken reasonable care to discover that the deceased would be exposed to the danger of receiving injury because of the acts of Sullivan, and had taken reasonable care to "prevent" the negligent act or omission of Sullivan which occasioned the death of the deceased.

Counsel for appellee cite cases in which this court has applied the doctrine that an employee does not assume all risks that are incident to his employment, but only such as are usual, ordinary and remain incident after the master has taken reasonable care to prevent or remove them. It is the duty of the employer to take reasonable measures of prevention to obviate the danger of injury to servants from risks that are incident to the employment. In the cases cited the negligence charged was the failure of the master to take those measures of precaution which were reasonably required to obviate the risk of injury to the servant from dangers incident to the employment, as in *Chicago and Alton Railroad Co.* v. *House,* 172 Ill. 601, where the railway, the employer, had negligently removed and ceased to longer provide a switch light, the maintenance whereof constituted a reasonable provision against the dangers incident to the employment which caused the injury; and in *Alton Paving Brick Co.* v. *Hudson,* 176 Ill. 270, where the master failed

to advise an inexperienced servant of the existence of a risk incident to the employment and particularly hazardous, of which the master had knowledge and the servant had not; and in *City of LaSalle* v. *Kostka*, 190 Ill. 130, where the servant was injured by the caving in upon him of the banks of a sewer,—a danger incident to his employment, but which the city could have obviated by the exercise of reasonable care in bracing or shoring the walls or banks of the sewer. In these cases we held, and in other like cases have uniformly held, that the servant did not assume a risk incident to his employment if the master, by the exercise of reasonable care for the safety of his workmen, could have prevented or removed or lessened the risk. The issue presented to the jury in the case at bar was whether the appellee was injured through the negligence of a fellow-servant. Such a risk was incidental to his employment. It could be obviated, or at least lessened, by the exercise of care on the part of the master to the end that only competent fellow-servants should be employed to labor with the deceased, and therefore the duty was cast upon the appellant to take reasonable precaution to employ none but competent workmen. There was no contention the appellant was negligent in this regard, and it was error to mislead the jury to understand, as did the instruction, that it further devolved upon the master, as a legal duty, to discover and prevent the alleged negligent act or omission of a competent fellow-servant of the deceased.

The appellant presents a serious objection to a matter of procedure in the trial court. While counsel for the appellee was making his closing argument to the jury, counsel for the appellant interrupted him with the objection that there was no evidence of the alleged facts which counsel for the appellee was stating in his argument. It was then discovered that the judge was not in his seat or in the court room. One of the counsel for the appellee requested the bailiff "to call the court." The

bailiff replied, "The judge is not in his room." Counsel for appellee asked counsel for appellant if he should suspend, and counsel for appellant said he did not ask that, but wanted to save an exception to the improper statements in the argument. Counsel for the appellee then proceeded in the absence of the court, and, in the opinion of counsel for the appellant, soon after indulged in a repetition of the other alleged improper statements, and counsel for the appellant again objected, and a colloquy occurred between counsel with reference to the matter. Subsequently the judge returned, but how soon thereafter is not shown by the record. The cause was submitted to the jury without further objection on the part of the appellant.

In *Meredeth* v. *People*, 84 Ill. 479, during the argument of the case the judge absented himself from the court room to attend to other judicial duties, his position on the bench being occupied by a member of the bar. This was a criminal proceeding, but in the course of an opinion reversing the judgment because of the conduct of the judge we said (p. 482): "Serious misconduct, it is insisted, was permitted in the presence of the jury hurtful to the cause of defendant; but whether that is so or not, the absence of the judge from the court room, engaged in other judicial labors, for a part of two days, in a trial of this magnitude, cannot be justified on any principle or for any cause. It is not allowable in a trial involving only mere property interests, much less in a case where the life of a human being depends upon the issue." It is the duty of the presiding judge of a trial court to preside in a judicial capacity during all of the time of the trial of a civil case. In *Meredeth* v. *People, supra*, we said the argument of the cause is as much a part of the trial as the hearing of the evidence. Whether the fact that the judge so absented himself during a portion of the time of the trial of this case shall be deemed fatal error, working, within itself, a reversal of the judgment, need not

be here decided, for the reason there is a conflict of authorities as to the necessary effect of such action by a judge, (21 Ency. of Pl. & Pr. 977,) and the views of the members of this court are not in harmony on the question, and the decision thereof is not necessary to be here made, as the verdict and judgment in the case will be reversed for the error in giving the instruction hereinbefore noted. We feel impelled to say, such a practice merits the most emphatic disapproval, even in such cases, if any there be, where, under the circumstances of the instance, it should be held not fatal error. The absence of the trial judge during the course of a trial, civil as well as criminal, not only opens the way for, but invites, abuses and misconduct that may obstruct and defeat a fair and impartial hearing and decision of the case and pervert the administration of the law to injustice, and such conduct on the part of the judge is always detrimental to the decorum and dignity of a judicial tribunal. If the presiding judge finds it necessary to absent himself from the court when a trial is in progress, he should suspend all judicial proceedings until he has returned. The evils likely to follow any departure from this rule are so obvious and grievous, that if objection thereto is seasonably made and properly presented it should be regarded a fatal error, except when, in a civil case or misdemeanor, it shall plainly appear to the reviewing court that the cause of the complaining party was not prejudiced by what occurred in the court during the absence of the judge.

The judgment of the circuit court and that of the Appellate Court will each be reversed, and the cause will be remanded to the circuit court for further proceeding not inconsistent with this opinion.

*Reversed and remanded.*