THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ISRAEL VARGAS, Defendant-Appellant.

First District (2nd Division)    No. 1—91—0625

Opinion filed March 28, 1995.

Michael J. Pelletier and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Jane Liechty Loeb, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McCORMICK delivered the opinion of the court:

After a jury trial, defendant was convicted of first degree murder of Alvin Gill on a theory of accountability and sentenced to 35 years' imprisonment. On appeal, defendant contends: (1) he was denied his right to due process as a result of the trial judge's leaving the courtroom during trial and allowing the trial to proceed in his absence; (2) his sentence was excessive; and (3) the trial court considered improper factors in determining his sentence. We affirm defendant's conviction and sentence.

On January 17, 1990, defendant and two codefendants discussed killing members of a rival gang in retaliation for a previous shooting incident. At the corner of 63d and Artesian in Chicago, they observed Gill, whom they believed to be a member of a rival gang because the bill of his cap was off to the right. Gill was chased and died of gunshot wounds inflicted by one of the codefendants.

Defendant first contends that his right of due process was violated when, during cross-examination of one of the State's witnesses, the

trial judge left the courtroom to take a telephone call. Defendant argues that the trial judge's absence constitutes plain error and, as such, mandates reversal of the judgment. The State contends that defense counsel's failure to object constitutes waiver of this issue. Alternatively, the State contends that the record does not affirmatively show that the trial judge actually left the courtroom or otherwise lost control of the courtroom and cites a number of cases from other jurisdictions in support of this proposition.

At trial, the trial judge interrupted defense counsel while counsel was cross-examining one of the State's witnesses, and the following proceedings were had:

"THE COURT: Excuse me, Mr. Flanagan. I have Judge Brady on the phone. You can continue. If you need me, let me know.

(Judge exited.)

MR. FLANAGAN: Q. Now, your job as a State's Attorney is to prosecute for the People of the State of Illinois?

A. That is correct.

Q. And that is what you were doing January 18th of 1990, isn't that right?

A. I was a prosecutor at that time, yes.

Q. And you were working in Felony Review?

A. That is correct.

Q. And I believe you told the ladies and gentlemen of the jury that when you work Felony Review you assist in the investigation of cases, isn't that right?

A. Yes.

Q. And you gather evidence?

A. Yes. We talk to witnesses, we talk to defendants if they are willing to talk to us.

Q. And the purpose of that is ultimately to be used in court, isn't that right?

A. Yes.

Q. That is what you told Mr. Vargas when you spoke to him on January 18th, isn't that right, anything that he'd say would be used in court, didn't you tell him that?

A. That's right I did inform him of, yes.

Q. So when you were talking to Mr. Vargas you were acting as an attorney for the State of Illinois and not as his attorney?

A. Yes. That is what I told him.

Q. And your job as a State's Attorney was to gather evidence to prosecute Mr. Vargas, isn't that right?

A. No. We gather information—

MS. RODI [the prosecutor]: Objection.

MR. FLANAGAN: Miss Court Reporter, could you make a note of where that is and then I can continue along another line.

Any objection, Counsel?
MS. RODI: No.
MR. FLANAGAN: Q. Now, in January of this year how long had you been working as a State's Attorney?
A. In January of 1990 I had been working, it wasn't four years yet because I started in June of 1986.
(Judge entered.)
MR. FLANAGAN: Judge, we did have an objection and it was one question ago. Maybe we could go back to that question. I would respectfully ask for your ruling.
THE COURT: You ask for what?
MR. FLANAGAN: Your ruling.
THE COURT: Well, what is the question?
MR. FLANAGAN: If the Court Reporter can read it back.
THE COURT: All right.
(The Court Reporter read the record.)
And there was an objection to that?
MR. FLANAGAN: Yes.
THE COURT: Overruled. He may answer."

We first observe that the State's contention that defendant waived this issue is without merit. While Illinois courts have found that defendants may waive the issue of substitution of judges during a criminal trial (*People v. Mays* (1962), 23 Ill. 2d 520, 525, 179 N.E.2d 654; *People v. Wills* (1987), 153 Ill. App. 3d 328, 339, 505 N.E.2d 754), the courts have not found that the right to have a judge present on the bench at all times during a trial may be waived. *Meredeth v. People* (1877), 84 Ill. 479, 482 ("It is not material whether the judge of the circuit court was absent from the courtroom, during the trial of the cause, by consent of counsel for the defense").

By the same token the State's alternative contention, that the record does not reflect whether the trial judge was absent from the courtroom, is disingenuous. Not only does the record reflect that the judge "exited" and "entered," but the record also reflects that the judge had to be apprised of what happened during his absence, evidencing that he heard no part of the proceedings and was not present to rule from the bench.

A judge may not absent himself from trial proceedings without calling a recess or otherwise suspending the proceedings. (*Meredeth*, 84 Ill. at 482; *Thompson v. People* (1893), 144 Ill. 378, 381, 32 N.E. 968; *Schintz v. People* (1899), 178 Ill. 320, 326, 52 N.E. 903; *Wells v. O'Hare* (1904), 209 Ill. 627, 636-37, 70 N.E. 1056; *Loftus v. Chicago Rys. Co.* (1920), 293 Ill. 475, 482, 127 N.E. 654; *People v. Chrfrikas* (1920), 295 Ill. 222, 228, 129 N.E. 73; *People v. Bolton* (1927), 324 Ill. 322, 329-30, 155 N.E. 310; *People v. Rudorf* (1909), 149 Ill. App. 215,

217.) Although our supreme court has not had occasion to rule upon this issue in several years, we believe the above cases are still good law. See *Mays*, 23 Ill. 2d at 524-25 (where the court in reviewing *Meredeth*, *Thompson* and another case, *Durden v. People* (1901), 192 Ill. 493, 61 N.E. 317, stated that it did "not disagree with these decisions in the light of the extreme situations" involved).

We note, however, that in each case where the supreme court has had occasion to address the issue of a judge's absence from the bench, the court, while specifically disapproving of the practice, has reversed only where the defendant suffered prejudice as a result of the judge's absence. For example, in *Meredeth* (84 Ill. at 482-83), a capital case, judgment was reversed because the judge was absent for two days during argument before the jury, his place was occupied by two other members of the bar, and the record showed that order was not maintained in the courtroom. In *Thompson* (144 Ill. at 381-82), the presiding judge went into his chambers during the State's closing argument to prepare jury instructions. During the State's argument, defense counsel made several objections that were never ruled upon. The court reversed the defendant's conviction. However, in *dicta* the court indicated that its ruling might have been different if the trial judge had remained within hearing of the argument and been available to rule upon any objections. In *Schintz* (178 Ill. at 326), the court found that although the trial judge was not present during the argument, he could hear the argument and "no questions were raised to be passed upon by the judge, and whilst not approving the practice of a judge absenting himself from the court room, we are not disposed to hold the facts here shown constitute error." Moreover, our supreme court has held that the absence of the trial judge from the courtroom in a criminal case is not cause for reversal absent a showing of prejudice. *Quigg v. People* (1904), 211 Ill. 17, 23, 71 N.E. 886.

■ Here, we do not condone the trial judge's absence from the bench and it was error for the trial judge to leave the bench, for whatever reason, during the trial without first recessing the proceedings. However, considering the relevant case law and the facts of this case, we find that the error was harmless. *Quigg*, 211 Ill. at 23.

Defendant next contends that the trial court's sentence of 35 years' imprisonment was excessive, in light of his potential for rehabilitation and his lack of a criminal record, and that his sentence was grossly and improperly disparate from the 20-year sentence imposed upon his codefendant James Kallenborn. He urges this court to reduce his sentence to 22 years pursuant to the court's authority under Supreme Court Rule 615(b). 134 Ill. 2d R. 615(b).

A trial judge's sentencing is afforded great weight and deference. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 431 N.E.2d 882.) A sentence is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. (*Perruquet*, 68 Ill. 2d at 154.) "A disparity between sentences will not be disturbed *** where it is warranted by differences in the nature and extent of the concerned defendants' participation in the offense." (*People v. Godinez* (1982), 91 Ill. 2d 47, 55, 434 N.E.2d 1121, citing *People v. Johnson* (1978), 59 Ill. App. 3d 640, 642, 375 N.E.2d 1027.) Fundamental fairness is not violated by the mere fact that one defendant receives a substantially longer sentence than another. *People v. Milton* (1989), 182 Ill. App. 3d 1082, 1094, 538 N.E.2d 1227.

■ Here, the record shows that the court properly considered all evidence presented by defendant in mitigation in imposing sentence. With respect to defendant's disparate sentence argument, the evidence established that codefendant Kallenborn (age 17) was younger than defendant (age 19) at the time of the offense. In addition, Kallenborn acknowledged his guilt, pleaded guilty and testified against codefendant Raphael Padilla. Illinois courts have found that "[i]t is proper for a trial court to grant leniency in sentencing a defendant who by his plea ensured prompt and certain application of correctional measures to him, acknowledged his guilt, showed a willingness to assume responsibility for his conduct, and cooperated in the successful prosecution of other offenders." (*Milton*, 182 Ill. App. 3d at 1094.) Finally, defendant's and Kallenborn's participation in the offense was not entirely equal; the trial court specifically noted that defendant went "scouting" for the potential victim. We do not believe that the trial court abused its discretion in sentencing defendant to 35 years in prison.

Defendant further argues that the trial judge improperly considered factors implicit in the offense as aggravating factors. In passing sentence, the court stated:

"Well, the Court has heard the arguments and the intentions [*sic*] raised today, both in aggravation and mitigation, the evidence presented on behalf of Mr. Vargas here by his counsel.

Court has also considered the facts of the case as he recalls them from the jury trial that Mr. Vargas chose to have. And also has considered this case in light of the statutory factors in aggravation and mitigation which the Court is duty bound by law to consider.

\* \* \*

*** It is implicit from the charge of course that the physical harm inflicted here was of the ultimate degree and while I say

that is implicit in any charge involving first degree murder. And the Court would consider that in aggravation.

*Nonetheless*, the facts of the case and the manner in which Mr. Gill met his death *may* be considered by the Court. \*\*\* [T]he shooting of Mr. Gill was clearly intended by the group that set out to chase him. \*\*\* Mr. Vargas voluntarily attached himself to that group, the evidence shows, was a group that was bent upon and involved in the commission of death." (Emphasis added.)

Defendant argues that the court's statements that the physical harm here was of the "ultimate degree" and that the perpetrators "intended to shoot" the victim are factors implicit in the crime of first degree murder. Defendant also argues that the court's comment that defendant was a willing participant in the murder is a factor implicit in a conviction for murder based on accountability.

In *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906, the supreme court held that factors inherent in a crime were improper to be considered as factors in aggravation. (*Conover*, 84 Ill. 2d at 404-05.) However, as the court explained in a subsequent case, *People v. Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138, this rule is not subject to rigid application. Furthermore, "[w]hile the classification of a crime determines the sentencing range, the severity of the sentence depends upon the *degree of harm* caused to the victim and as such may be considered as an aggravating factor in determining the exact length of a particular sentence, *even in cases where serious bodily harm is arguably implicit in the offense for which a defendant is convicted*." (Emphasis in original.) (*Saldivar*, 113 Ill. 2d at 269.) In *Saldivar*, the court modified the defendant's sentence because it found that the trial court's finding in aggravation was not "directed at the degree or gravity of the defendant's conduct, *i.e.*, the force employed and the physical manner in which the victim's death was brought about or the nature and circumstances of the offense," but rather focused primarily on "the end result of the defendant's conduct, *i.e.*, the death of the victim, a factor implicit in the offense of voluntary manslaughter." *Saldivar*, 113 Ill. 2d at 271-72.

■ The same cannot be said in this case. First, we disagree with defendant that the trial judge, "while acknowledging that the fact that the 'physical harm inflicted here was of the ultimate degree' was inherent in the offense, nevertheless stated that he was considering this factor in aggravation." From our review of the court's comments, we believe that the court reporter misheard or mistyped the court's statement so that it failed to be recorded that the court would *not* consider this factor in aggravation. The court's statement immediately following the "ultimate degree" statement clearly negates defendant's interpretation and supports our conclusion, *i.e.*, the court stated, "*Nonetheless*, the facts of the case and the manner in which

\*\*\* [the victim] met his death *may* be considered." (Emphasis added.) The use of the word "nonetheless" clearly denotes an exclusion of the preceding "ultimate degree" statement as a factor of consideration and an inclusion of the succeeding statement; the court was first indicating a factor it could not consider (one implicit in the offense) and those factors that it may consider (the facts of the case and the manner in which the victim met his death). Second, the remaining comments complained of by defendant are merely a recitation of the evidence presented, leading up to the stated bases for the sentence imposed, *i.e.*, defendant's age at the time of the offense, that defendant went 'scouting" for a potential victim, the fact that defendant was out on bond for a less serious offense (burglary) at the time of the homicide, and the court's belief that deterrence was necessary to prevent others from engaging in similar conduct.

Deterrence is a proper factor to consider in determining an appropriate sentence under the Unified Code of Corrections. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(a)(7) (now 730 ILCS 5/5—5—3.2(a)(7) (West 1992)).) A judgment depends on many factors, including the defendant's credibility, demeanor, general moral character, age and social environment. (*People v. Martin* (1983), 112 Ill. App. 3d 486, 502, 445 N.E.2d 795.) Moreover, the law is well settled that a trial judge is in a better position to consider these factors than the reviewing court. (*Perruquet*, 68 Ill. 2d at 154.) We find no error in sentencing, and we decline to disturb the judgment of the trial court.

Defendant's final contention is that the trial court improperly considered the fact that he was out on bond on a less serious offense (burglary) at the time of the homicide. Defendant initially argued before this court that this information was improperly considered as an aggravating factor since he was never convicted of the offense. The State, in a motion to supplement the record, demonstrated that defendant was convicted of the offense. In reply, defendant argues that the State violated its promise to defendant that in exchange for his plea of guilty to the burglary charge, it would not use the burglary conviction against him in "any manner whatsoever" in this case.

■ We find no evidence that defendant's burglary conviction was used in aggravation at sentencing. During the sentencing proceedings on the prior burglary guilty plea, the following colloquy occurred:

> "THE COURT: \*\*\* [I]t was the understanding [that] in no way whatsoever would this disposition affect the trial or the disposition of the remaining [murder] charge which, of course, is more serious, and the State would not be using that impeachment if

Mr. Vargas does testify or in aggravation if he were to be found guilty, is that your understanding?

MS. RODDY [*sic*] [assistant State's Attorney]: That's correct."

At sentencing in the instant case, the State made the following statements:

"[Defendant] was also involved in the actively seeking out a victim of course as evidenced by the fact when he went into the store. Furthermore, at that time he was also on bond for residential burglary. This was committed while he was on bond for that case."

Defense counsel objected, stating, "Judge, I ask you to not take that into consideration. That wouldn't be used for——." The following colloquy then occurred:

"MR. SMITH [assistant State's Attorney]: I am not expecting [*sic*] of a conviction at all, your Honor.

THE COURT: No, that is true. There was and [*sic*] understanding it would—the conviction would not be used in any manner whatsoever. The fact that he was on bond however, I think, is a fact. It is a fact that can be referred to so.

MR. FLANNIGAN [*sic*] [defense counsel]: *All right.*" (Emphasis added.)

The trial court later went on to state:

"It is true that *Mr. Vargas does not have any background that the Court may consider by way of aggravation.* However, the Court as Mr. Smith points out, may well consider the fact that he was indeed on bond for a less serious offense when this crime was committed." (Emphasis added.)

It is clear that the trial court referred only to the fact that defendant was out on bond at the time of the homicide. The court did not consider the burglary conviction as substantive evidence in light of its acknowledgement that defendant did not have "any [criminal] background that the Court may consider by way of aggravation." Moreover, defense counsel did not object to the court's final pronouncement that it could consider as a factor in sentencing that defendant had been out on bond. This was a proper factor to consider in aggravation. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(a)(12) (now 730 ILCS 5/5—5—3.2 (West 1992)).) Based on the record before us, we find no reason to overturn defendant's sentence.

Affirmed.

SCARIANO, P.J., and DiVITO, J., concur.