## GEORGE B. QUIGG
### *v.*
## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed June 23, 1904—Rehearing denied October 12, 1904.*

1. CRIMINAL LAW—*verdict is ordinarily conclusive of weight of evidence.* The verdict of the jury in a criminal case is conclusive of the weight of the evidence and the credibility of witnesses unless it is reasonably clear that it is erroneous.

2. SAME—*what not material in prosecution for perjury.* Where the principal witness in a perjury case is himself afterward indicted for perjury in swearing that the accused gave certain testimony in a garnishment proceeding, whether the garnishment was regular and the judgment therein valid are not material questions.

3. INSTRUCTIONS—*when instructions in criminal case are sufficient.* It is sufficient if the series of instructions in a criminal case, considered as a whole, fully and fairly announce the law applicable to the theory of the prosecution and of the defense.

4. SAME—*when omission of the words "from the evidence" is not fatal.* Omission of the words "from the evidence" from an instruction conditioned upon the belief of the jury "beyond a reasonable doubt" is not ground for reversal if other instructions require the belief of the jury to arise from the evidence.

5. RECORD—*record cannot be impeached by mere affidavits.* The record of a criminal case showing proper arraignment and plea can not be impeached by affidavits.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

FREDERICK S. MOFFETT, for plaintiff in error.

H. J. HAMLIN, Attorney General, and CHARLES S. DENEEN, State's Attorney, (FREDERICK L. FAKE, Jr., and F. L. BARNETT, of counsel,) for the People.

Mr. CHIEF JUSTICE RICKS delivered the opinion of the court:

Plaintiff in error was indicted for perjury at the January term, 1903, of the Cook county criminal court and on October 29 of the same year was placed upon trial and

convicted, and is now serving a term in the penitentiary under the Indeterminate act.

The record· discloses the following state of facts, which it will be necessary to state in detail in order to get at the foundation of the case: It appears that V. W. Rutkowski, a groceryman in South Chicago, brought suit and obtained a judgment before a justice of the peace against Mike Ratkovic, and on the 18th day of August, 1902, a garnishment proceeding having been instituted, Rutkowski appeared as a witness, the only question being as to whether Ratkovic was the head of a family and residing with the same, and it appears the evidence of Rutkowski was to the effect that Ratkovic was the head of a family but spent his money in the saloons and did not provide for the family. The South Chicago Furnace Company, being garnishee, answered under oath, stating that said garnishee was indebted to said Ratkovic in the sum of $48.40. The trial resulted in a judgment against the company, as garnishee, for the sum of $48.40, and on September 12, 1902, Ratkovic made complaint before Justice Everett against Rutkowski, charging him with having committed perjury on the trial of said garnishment before Justice Callahan. Rutkowski was arrested and his preliminary examination had on September 19, 1902. At the hearing, plaintiff in error, being a lawyer, appeared for the People in the prosecution of Rutkowski. The perjury alleged against Rutkowski was, in substance, as follows: That when the garnishment case, entitled *Ratkovic, for use of Rutkowski,* v. *South Chicago Furnace Co.*, was heard before Justice Callahan on the 18th day of August, 1902, Rutkowski testified that Ratkovic did not reside with his family and did not support his family, and to prove that Rutkowski did so testify, the plaintiff in error, George B. Quigg, took the stand and under oath testified that he was present in the court of Justice Callahan on August 18 and heard Rutkowski testify, and that Rutkowski did

testify that Ratkovic did not live with his family and did not support the same. It is further charged that the plaintiff in error, in said cause, testified that the cause before Justice Callahan was continued from the 18th day of August to a later date, when in truth and in fact no such continuance was had. Upon the preliminary hearing Rutkowski was discharged and plaintiff in error was indicted for perjury, as above set forth.

There is no contention that the indictment is not sufficient, but it is first argued that the verdict is not justified by the evidence, and therefore the case should be reversed. Without going into the evidence in detail, it is sufficient to say we think there is ample evidence in the record to justify a conviction. In fact, it is not denied that plaintiff in error testified as charged in the indictment, and the main inquiry deals with the truth or falsity of that testimony, and whether or not Quigg was in Justice Callahan's court at the time of the trial of the garnishment proceedings. There is not a single witness who says he was. Four witnesses say he was not. John Foley, a clerk in Justice Callahan's court, testified as follows, to-wit:

Q. "Will you tell the jury whether or not Mr. Quigg, the defendant, was in there at any time during the proceeding (the garnishment)?

A. "No, sir; he was not.

Q. "What time of day was that proceeding had?

A. "At two o'clock. It lasted probably three or four minutes. There was no continuance for any purpose."

Otto Strand, a constable, testified: "At that time there were present Judge Callahan, Mr. Foley, Frank Foster, Rutkowski, two ladies and myself. There was no one else there during the trial or any part of the trial, not that I recollect at present. I know the defendant, Quigg. I did not see him there. He was not there." Rutkowski testified: "There were with me in Justice Callahan's court on the 18th of August, Justice

Callahan, his clerk, Mr. Foley, the ladies, and the constable, Strand. There was nobody else there. I know George B. Quigg by sight. He was not in the court room during the hearing of that trial." Justice Foster, who was then a practicing attorney representing Rutkowski, testified: "There were present at the time this proceeding took place, Mr. Rutkowski, his two witnesses, Strand, the constable, myself, Justice Callahan, and his clerk, Mr. Foley. I know George B. Quigg. He was not there present at any time during the proceedings." It being the peculiar province of the jury to determine the weight of the evidence and credibility of the witnesses, their determination must be accepted as conclusive unless it is reasonably clear that an error has been committed. *Henry* v. *People*, 198 Ill. 162; *Gainey* v. *People*, 97 id. 270.

It is next contended that the proceedings in the garnishment case were void, for the reason the summons in the original suit in assumpsit between Rutkowski and Ratkovic was not dated, thereby making the judgment void, and the judgment being the basis of the proceedings, there could be no perjury unless all the proceedings were valid. In this contention we cannot agree with counsel for plaintiff in error. The court, upon his own motion, gave the following instruction, being instruction No. 1, and which we think was properly given:

"The question in this case is not whether the action of Justice Callahan was right or whether any other officer in South Chicago did his duty or not, but what the defendant did before Justice Everett,—whether he there committed perjury or not."

There is no question but that the proceedings before Justice Everett, in which Rutkowski was charged with perjury and in which the plaintiff in error testified, were regular. The testimony given by plaintiff in error before Justice Everett, if true, was sufficient to have sent Rutkowski to the penitentiary, and there can be no doubt but that it was material to the point at issue. It would

seem folly for the plaintiff in error to insist that Rut-kowski should be bound over and sent to the peniten-tiary for giving testimony in a proceeding which was the foundation of the one in which he himself testified, and now contend that the whole of the proceedings was void. We do not deem it necessary to determine whether the original judgment in the proceeding was void or even voidable, inasmuch as we think the court properly in-structed the jury that the question was whether or not plaintiff in error committed perjury in Justice Everett's court.

It is next contended that certain instructions given on behalf of the People were erroneous. Of instruction No. 1 above set forth it is said, that "whether any other officer in South Chicago did his duty or not is a matter wholly foreign to the case. There was no evidence for or against the proposition—nothing upon which to base such a statement." So much of the instruction complained of was unnecessary and renders the instruction somewhat argumentative, but the substance of the instruction, aside from the portion complained of, was proper. Plaintiff in error was contending that he ought not to be con-victed of perjury, even though he testified willfully and falsely of a matter material to an issue being tried in Justice Everett's court, because of a defect in a certain proceeding long before had in Justice Callahan's court, in which plaintiff in error did not testify, was not pres-ent and was not interested, as a party or otherwise; and while the portion of the instruction complained of ought to have been omitted, we do not regard the instruction, for the reason claimed, as harmful to plaintiff in error. The contention that from this instruction the jury might infer that the People were not required to prove the ma-terial averments in the indictment does not seem to us to be a reasonable deduction from anything said in that instruction.

It is claimed that instruction No. 9 is erroneous for the reason that it reads as follows: "The court instructs the jury that in this case, if they believe, beyond a reasonable doubt," etc., and omits the words "from the evidence." In various instructions for the People and the defendant the court instructed the jury that the prosecution must establish by the evidence, to the satisfaction of the jury, beyond a reasonable doubt, the guilt of the accused. It is sufficient if a series of instructions in a criminal case, considered as a whole, fully and fairly announces the matters of law applicable to the theory of the prosecution and the defense. (*Henry* v. *People*, 198 Ill. 162.) The omitted words, or their equivalent conveying the same meaning, should have been incorporated in the instruction, but being given in various other instructions we do not think the jury could have been misled by the omission of the words complained of.

Instruction No. 8 is also complained of, for the reason it omits the words "willfully and corruptly." But the jury had already been informed in other instructions that to constitute perjury the false evidence must be willfully and corruptly given, and, for the same reasons as given above in reference to instruction No. 9, we cannot hold the omission of the words "willfully and corruptly" to be reversible error.

It is next claimed that instruction No. 7 is argumentative and should not have been given. This instruction presented the law on the question of reasonable doubt. Practically the same instruction was passed upon in the case of *Spies* v. *People*, 122 Ill. 1, and was there held good.

It is next insisted the court erred in refusing to give certain instructions asked on behalf of the plaintiff in error. The court gave the jury twenty-three instructions asked on his behalf, which seem to cover every phase of law governing the case. The instructions that were refused that contained correct statements of the law were rendered unnecessary by reason of the giving

of other instructions covering the same points.    Others were so defective that their refusal was proper.

It is next insisted there was no arraignment and plea of the defendant until after the jury was empaneled and the trial entered upon.    It is admitted the record does not bear out plaintiff in error on this point but shows the reverse, but he relies upon affidavits of different parties to sustain his contention.    Neither of the affidavits refers to any minute, memoranda or notation made by the judge or clerk, and we have repeatedly held that unless there was some minute made by the court or clerk to sustain an amendment of a record it could not be amended.    The record shows the accused was duly arraigned and pleaded, and it imports a verity, and the proposed amendment was an effort to contradict the record by affidavits, and we think the court properly refused to consider the affidavits for that purpose.

It is next complained that the State's attorney made improper remarks before the jury, but it appears from the record that at the time the remarks were made by the State's attorney the jury had gone, or were going, to their jury room, and it is not shown that the jury even heard the remarks, or that if they did the interests of defendant were prejudiced in any manner.

It is next argued that the court left the room during the progress of the trial and that the defendant's interests were thereby prejudiced; but the record only shows the judge to have been out of the court room at the time of the remarks of the State's attorney complained of, and as was said in reference to that point, so far as the record shows the jury had retired to their room to consider their verdict, and there being no record of any proceeding that could have been detrimental to defendant's interest in the absence of the judge, this point is not well taken.

Some contention is made in reference to the admission and exclusion of evidence, but upon a careful review of

the case we cannot say that plaintiff in error has suffered injury in that regard. We think there is ample evidence in the record to sustain the verdict, and where there are technical errors in reference to the admission and exclusion of evidence, if, upon an examination of the whole record, it is shown that substantial justice has been done, a judgment in a criminal proceeding will not be reversed.

Finding no reversible error the judgment of the criminal court of Cook county will be affirmed.

*Judgment affirmed.*