(No. 24190.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM CARMEN *et al.* Plaintiffs in Error.

*Opinion filed October 22, 1937—Rehearing denied Dec. 9, 1937.*

HAROLD L. LEVY, and WM. SCOTT STEWART, for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, BLAIR L. VARNES, C. VERNON THOMPSON, and WILLIAM B. LYNCH, JR., of counsel,) for the People.

Mr. JUSTICE SHAW delivered the opinion of the court:

Plaintiffs in error, William Carmen, J. E. Stinson and Henry T. Sather, were convicted in the criminal court of Cook county on an indictment which charged them with conspiracy to cheat and defraud holders of certain obligations, and on that verdict they were sentenced to the peni-

tentiary for not less than one, and not more than five, years. The Appellate Court for the First District has affirmed that judgment of conviction and the cause is brought here for review on writ of error.

The testimony upon which the conviction was based is set forth in great detail by the Appellate Court in its opinion which will be found reported in 291 Ill. App. 399, and it will be unnecessary to detail the evidence in this opinion. In substance, the plan of operations shown to have been adopted by the plaintiffs in error may be summarized as follows: They seem to have been in possession of a list of stockholders in the Great Eastern Natural Gas Company (hereafter referred to as the Great Eastern) and it appears that that stock was practically worthless. In the different transactions shown, one of the defendants would call on a stockholder of the Great Eastern and represent that some of the stock of that company had been sold to the Trinidad International Petroleum Company (hereinafter referred to as the Trinidad International) which had purchased some land from the Great Eastern, and that there were valuable notes connected with the Great Eastern that were then going on the London market at approximately one pound each; that the Trinidad International was successfully operating exceedingly valuable oil properties in the West Indies and had large and valuable possessions in Ethiopia, which could not be instantly developed because of the war going on in that country. It was made to appear to the intended victim that by surrendering the stock which he held in the Great Eastern and paying an additional three dollars per share, he could obtain stock of great value in the Trinidad International, which would result not only in saving approximately two dollars per share on the Great Eastern investment. which was probably worthless, but also in producing large profits on the Trinidad International stock, which was, also, apparently worthless. After preparing the prospect with this

kind of a sales talk another one of the conspirators would call, pretending not to know the first one who had called, but to be an entire stranger, and follow up with an equally strong talk and equally false representations, so that, eventually, the prospect would become convinced that there was really some active demand for the Great Eastern stock in order that it might be exchanged for the stock of the Trinidad International. The scheme was successfully worked on one prospect, a Margery Cowan, who ran a small dress-shop in Chicago, but it failed to work with another intended victim who became suspicious and investigated the whole matter. He told one of the conspirators that he had completed his investigation and discovered there was no value in any of the various stocks and that the companies did not maintain any offices, except desks in a room with a large number of telephones. No further effort was made to transact business with this particular person. Another intended victim not only became suspicious, but called in representatives of the State's attorney's office and the so-called "Blue Sky" department, and the three conspirators were trapped in an effort to secure fifteen thousand dollars from this person. After being caught, one of the conspirators was taken to his hotel where one of the others called him, inadvertently, in the presence of the policeman who had arrested the occupant of the room, and the conversation at that time was such as to amount to a virtual confession. It appears from the Appellate Court opinion, and is not questioned in the briefs, that on oral argument in the Appellate Court, defendants' counsel confined himself to the single contention that the judgment ought to be reversed because the People failed to prove that the representations made were false, and conceded that if such proof had been adduced under any count of the indictment, the conviction could be sustained.

A careful examination of the briefs fails to disclose any substantial point not fully considered and properly de-

cided by the Appellate Court. The defendants complain here that the Appellate Court did not accord to the defendants their presumption of innocence, because that court took notice of the fact that none of the defendants had taken the witness stand to explain the extravagant representations made by them, or any of the circumstances testified to by the People's witnesses. We know of no rule prohibiting a court of review from taking notice of the fact that defendants fail to testify, nor do we see any error in the statement of the Appellate Court that the jury was fully warranted in believing the witnesses for the People and the things testified to by them, in the absence of any counter-proof or explanation. Neither was there any error on the part of that court in holding that an inference of falsity might be drawn from the very extravagant nature of the representations made, which amounted, in substance, that one-pound notes were to be practically given away by the Trinidad Petroleum company. It was not necessary that the falsity of these representations be proved by direct evidence, but it might be inferred from all the facts and circumstances. (*People* v. *Strosnider,* 264 Ill. 434; *People* v. *See,* 258 id. 152; *People* v. *Hotz,* 261 id. 239.) The following language which we used in *People* v. *Harrington,* 310 Ill. 613, is applicable to the present case: "The returns which plaintiffs in error promised were many times larger than returns ordinarily expected from legitimate undertakings, and the natural inference to be drawn by any well-informed person would be that the proposition offered by plaintiffs in error was fraudulent. Plaintiffs in error represented to their customers that they had connections with Wall street and that they made these extraordinary returns by dealing in stocks and real estate. If these statements were true plaintiffs in error could have proven their truth. With nothing but the description of the scheme before them the jury were fully warranted in believing that the statements were false."

There is no occasion for taking up further room in these Reports with this case. The opinion of the Appellate Court is full and complete and it is in all respects approved. Plaintiffs in error chose to rely upon some supposed weakness in the case for the People rather than to explain their extravagant claims. In this they were within their rights, but they are now bound by a verdict which is supported by sufficient evidence.

The judgment is affirmed.　　*Judgment affirmed.*