(No. 24470.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SAM BERKOWITZ, Plaintiff in Error.

*Opinion filed June 15, 1938.*

JONES and FARTHING, JJ., dissenting.

HAROLD LEVY, and GEORGE CRANE, (WM. SCOTT STEWART, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, BLAIR L. VARNES, and WILLIAM B. CRAWFORD, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error, Sam Berkowitz, was, with his brother Ben, indicted in the criminal court of Cook county on the charge of receiving stolen property. The indictment consisted of two counts. The first count charged the defendants with buying, concealing and aiding to conceal 3084 pounds of brass wire of the value of fifteen cents per pound, that had been stolen from the Manufacturers Belt Hook Company. The second count was identical with the first with the further allegation that the defendants, in 1933, were indicted on a charge of having received stolen property of the value exceeding $15 and that they pleaded guilty to the charge of receiving stolen property of the value of $14, and so had been previously convicted of the crime of receiving stolen property.

A severance was granted to Ben Berkowitz. On trial, Sam Berkowitz was found guilty and the jury by its verdict found that he had previously been convicted of the crime of receiving stolen property as charged in count two of the indictment. In accordance with the statute he was sentenced to the penitentiary for a period of from two to fifteen years and seeks review of that judgment against him.

The charge was laid under section 240 of the Criminal Code relating to receiving stolen property, as amended in 1933. (Ill. Rev. Stat. 1937, chap. 38, par. 493.) This section is as follows: "Whoever, after having been convicted of the offense of buying, receiving or aiding in the conceal-

ment of stolen money, goods or any property, the stealing of which is declared to be larceny, or property obtained by robbery or burglary, if he be again convicted of a like offense, or whoever, within a period of six months is convicted of three distinct acts of buying, receiving or aiding in the concealment of stolen property, or property obtained by robbery or burglary, knowing that the same was so obtained, shall be imprisoned in the penitentiary not less than two nor more than fifteen years." Prior to the amendment of 1933 the second clause read as follows," "or whoever, at the same term of court is convicted of three distinct acts of buying," etc. That amendment substituted the words "within a period of six months" for the words "at the same term of court." Otherwise the section remains the same as when adopted as a part of the original Criminal Code.

There is no dispute in the testimony of the witnesses offered on the trial. The defendant did not take the stand and offered no testimony in defense touching the charge of the indictment. The evidence showed that Michael Rychlik and his brother Frank had, for some time prior to October 12, 1936, the date charged in the indictment, stolen various articles from their employer, the Manufacturers Belt Hook Company. On this last named date they were discharged because of such thefts. Michael knew the defendant who operated a junk yard called the North Side Metal Company. He had sold him scrap-brass at different times. When he was discharged Michael Rychlik had forty coils of brass wire in his garage which he had taken from his employer. According to the evidence, this wire was not scrap but was usable and merchantable wire used in the business of his employer. That night he called up the defendant and finding he was not at home had the call forwarded to the place to which he had gone, and told him he must see him. Defendant, and his brother Ben, met Michael and Frank that night. Michael told them that he had been in

trouble down at the shop; that they had discovered he had been stealing metal; that he had saved up quite a few coils of brass wire in his garage and wanted to dispose of them right away. Defendant agreed to take the wire but would not take it that night as his place of business was closed. On the next morning Michael and Frank Rychlik loaded the former's car with brass wire and drove over to the defendant's place of business. Frank then got out of the car and went home and defendant got in the car with Michael and directed him to the Union Park Junk Shop. On the way over Rychlik told defendant he would let him have the brass wire at one cent per pound less than what he had been receiving and defendant said they would take care of that later. The coils were unloaded at a shed and Michael went back for the rest of the wire in his garage, which he and Frank also hauled over to the junk yard.

Irving Rozner testified that he had been operating a junk shop known as Union Park Junk Shop; that Herman Berkowitz, a brother of the defendant, was in business with him. He also testified that on the morning of October 13 he saw defendant at the Union Park Junk Shop with a man whom he afterwards learned was Michael Rychlik. Before he had talked to the defendant and Rychlik together he talked alone to the former, who told him he had some "stuff out there." Then Rychlik came into the yard bringing some brass wire made up into coils which they threw into a shed. Michael and Frank Rychlik came back in two cars with more of the same kind of brass wire and put it in the same shed. Rozner testified that he then called up the defendant who told him to take the stuff over to the "Argo;" that the truck would be over and to put it on the truck, and that after that conversation a colored man named William Winton brought the truck over.

Winton worked for Sam and Ben Berkowitz at the North Side Metal Company. He testified to receiving forty coils of the wire from Rozner on that day and delivering it as directed.

A day or two later, Michael and Frank Rychlik went to see the defendant to get the money from the sale of the wire. He told them the coils weighed 1800 pounds; that the police had searched his place and found some checks made out to Michael and he was afraid some trouble might arise, and that Michael had better come back the next day. The record shows there were 3084 pounds of this wire. Michael Rychlik testified he had previously received five and one-fourth cents a pound for scrap-brass which he sold to defendant and was paid by check. A representative of the Manufacturers Belt Hook Company testified that the brass wire stolen by Rychlik was worth fifteen and three-fourths cents per pound. Frank Rychlik also testified corroborating his brother's testimony.

A statement made by the defendant in the State's attorney's office was admitted in evidence in which the defendant stated, among other things, that Michael Rychlik had told him he had stolen the wire; that his employer had discovered it and he wanted to get rid of it, and that he, the defendant, agreed to take the wire over to the Union Park Junk Shop.

The People's evidence is uncontradicted and so clearly shows that defendant purchased the stolen wire knowing it was stolen, that his guilt has been proved beyond the possibility of a doubt.

The principal grounds on which the reversal of this judgment is sought are that the section of the statute under which the indictment is·laid is vague and indefinite; that the court seriously prejudiced the defendant by leaving the court room, thereby permitting the State's attorney to use improper and prejudicial argument, and that errors were made in rulings on admissibility of evidence. It is also argued that defendant was entrapped.

Counsel for defendant, in their argument, say that the uncertainty and indefiniteness of the act under which the indictment is laid resulted in a variance in the proof of the

charge made by the indictment. It is said that it is impossible to tell what is meant by the second clause of the section, and that the only construction which can reasonably be put upon it is that the previous conviction, referred to in the first clause, means conviction of a felony, and that the three indictments in six months, designated in the second clause, refer to misdemeanors. The conclusion drawn from this proffered construction is that since the first conviction of the defendant, while the indictment charged a felony, was a conviction by plea of guilt of a misdemeanor, the statute can have no application to this defendant in so far as the indictment charged a previous conviction.

This section has remained in the statute since the revision of 1874 and, with the exception of the amendment of 1933 referred to, has remained unchanged. As the act commonly known as the Habitual Criminal act, relates only to previous convictions of burglary, grand larceny, horse stealing, robbery, forgery or counterfeiting, (Ill. Rev. Stat. 1937, chap. 38, par. 602,) it is evident that the General Assembly, in order to combat the evil of receiving stolen property and its serious influence as a temptation to others to steal, enacted, as a part of the statute on receiving stolen property, provisions in the nature of an habitual criminal statute, relating to the crime of receiving stolen property. Nowhere in this act is it required, in order to apply the punishment where a previous conviction is shown, that such conviction be for the receiving of stolen property, the stealing of which would amount to grand larceny. The language of the first clause of the section under which this indictment is laid is very plain and we find no basis for the construction proffered by the defendant's counsel. They say that if that construction be not adopted then there appears to be no need for the enactment of the second clause. The defendant was not indicted under the second clause but under the first, and if that clause be sufficiently clear, and we think it is, defendant's contentions in this behalf cannot be sustained.

Concerning defendant's assigned error as to prejudicial conduct on the part of the judge in leaving the court room, the record shows that during the closing argument for the People the trial judge, together with associate counsel for the defendant, went into the former's chambers, leaving the door to the court room open, and there prepared certain instructions for the defendant, and that while he was out of the court room the State's attorney used argument which counsel say was prejudicial. Upon the judge's returning to the bench, at the close of the argument, counsel raised an objection. The judge had the reporter read the remarks objected to and sustained the objection, cautioning the jury not to consider them. Defendant's counsel argue that the judge's absence was an error requiring reversal of this judgment; that he should have stopped the proceedings if he left the court room, and that the injury done by the arguments of the State's attorney while the judge was out of the room, could not be corrected by the court's instructions. *People* v. *Chrfrikas,* 295 Ill. 222, is cited. In that case, during the temporary absence of the trial judge from the court room, though within hearing, the prosecuting attorney referred to a well-known atrocious crime of that time. This court reversed the case on that ground, holding it was serious error for the judge to leave the court room during the course of the trial, even though he was within hearing of what was going on in the court room. There is little basis for comparison between the condition of the record in that case and the record in this case. There, the questions of fact were strongly controverted and this court could not tell whether the error affected the verdict. Here, there is no dispute as to defendant's guilt. No jury could have arrived at a verdict other than one of guilty.

In this case, the prejudicial error charged to have been committed by the State's attorney in the absence of the trial judge, consisted of a reference by the State's attorney to the failure of the defendant to testify. In this statement the

State's attorney referred to the opening statement by counsel for the defense and asked the jury if one scintilla of that evidence had been proved in the case, and asked where the evidence of the defense was. The judge, as we have seen, sustained the objection to this argument. The record discloses that the State's attorney was referring to what counsel for the defense had said in his opening statement. The defendant was not mentioned by name, though it was obvious to whom the prosecutor referred.

Not all law writers, and not all courts, agree as to the justice of the rule requiring that the State's attorney do not comment on the fact that the defendant did not take the witness stand in his own behalf. On the one hand, it is asserted to be inconsistent that silence on the part of the defendant, when accused outside the court room by one not sworn as a witness, may be taken as evidence of such defendant's guilt, while silence on his part, when accused in the court room by witnesses under oath, is not only not to be considered evidence of anything, but no one is permitted to talk about it. On the other hand, it has been recognized by this court as the right of a defendant to refuse to testify, placing his hopes for acquittal on the weakness of the People's case. But it is also the rule that, in a criminal case, where there is no evidence whatever contradicting positive proof offered by the People, argument of the State's attorney directing attention to the fact that the evidence has not been contradicted, is not an unwarranted reference to the failure of defendant to testify. (*People* v. *Birger,* 329 Ill. 352.) To the same effect is the reasoning in *People* v. *Carmen,* 367 Ill. 326. If, in this case, the remarks of the State's attorney can be construed as a comment on the failure of the defendant to testify, such argument was, under the rule adopted in this State, erroneous; yet it cannot be said that in a case of this kind, where the proof is overwhelming and uncontradicted, and where the jury has nothing to do with the fixing of the punishment,

such an error requires a reversal of the judgment. And so with the absence of the judge from the court room. Were this case in any way close on the facts, or were it possible to see that the jury might have returned any other verdict had the judge been at all times on the bench, such absence would require a reversal. The evidence here was so overwhelming, complete and uncontradicted, that this court would not be justified in putting the People to the expense of a new trial of the cause, where it seems clear such retrial must result in the same verdict. Were it a case where the jury fixed the punishment, a different situation would be presented.

Defendant's counsel say that he was entrapped, and that the Rychliks were coöperating with their employer to induce the defendant to take this brass wire. It is a sufficient answer to this argument to say that there is no evidence whatever in the record to substantiate the charge of entrapment. The evidence all shows that Michael Rychlik was anxious to get rid of this wire because his thefts had been discovered. Counsel for defendant say that the court erred in not permitting the defendant to prove that certain other boys, employees of the Manufacturers Belt Hook Company, whose thefts from the company had also been discovered, had never been indicted or prosecuted, the theory of the defense being that the employer granted them immunity in order to entrap the defendant. There is no evidence that these other boys had anything to do with the taking of this brass wire. Rychlik's testimony was that he, alone, had stolen it. There was no evidence that the other boys were connected in any way with the purchase of the wire by the defendant. Such ruling was not error.

There is nothing in this record to justify a retrial of this case. The judgment is affirmed. *Judgment affirmed.*

Mr. JUSTICE FARTHING, dissenting:

In this case, the majority opinion holds that it is not sufficiently prejudicial to work a reversal for the judge to

leave the court room during the trial and for the State's attorney to comment on the fact that the defendant did not testify in his own behalf. Our holding that it was prejudicial error for the judge to leave the court room during the trial, in *People* v. *Chrfrikas,* 295 Ill. 222, is pointed out but not followed in the majority opinion. It is admitted that in his remarks in the absence of the trial judge, the State's attorney obviously referred to the defendant although the latter was not mentioned by name. Objection was sustained to these remarks and the ground of the objection was that it is improper to comment on the failure of a defendant to testify in his own behalf in a criminal case. This rule is based on the constitutional provision that a defendant shall not be required to give evidence against himself. Testimony as to admissions against interest made before the trial and where there was a duty to speak is competent testimony but we have held repeatedly that no such duty exists during the trial of a case. Neither *People* v. *Birger,* 329 Ill. 352, nor *People* v. *Carmen,* 367 id. 326, has any application to the point before us. The one had to do with comment that certain facts had been proved and had not been denied or contradicted, and the other involved a statement by the Appellate Court in its decision that the defendant had not testified.

Both errors were prejudicial. Either was enough to demand a new trial. The fact that punishment was fixed by the court and not the jury demanded that the trial judge be present and did not remove the evil effect of comment on the defendant's failure to testify.

Mr. JUSTICE JONES, also dissenting.