(No. 79044.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ISRAEL VARGAS, Appellant.

*Opinion filed November 21, 1996.*

356

BILANDIC, C.J., joined by NICKELS, J., dissenting.

Michael J. Pelletier, Deputy Defender, Alan D. Goldberg, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, and Rudy Renfer, law student, for appellant.

James Ryan, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Arleen Anderson, Assistant Attorney General, of Chicago, and Renee Goldfarb, Susan R. Schierl, Robert Robertson and Michael P. Golden, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

The question presented in this case is whether a trial judge's absence from the courtroom during a portion of the cross-examination of a witness at a murder jury trial constitutes *per se* reversible error, or whether prejudice to defendant must be shown in order to warrant reversal. We hold that judicial absence during a felony trial constitutes *per se* reversible error.

### Background

The record in the present case reveals that in December 1990, defendant, Israel Vargas, was tried and convicted by a jury in the circuit court of Cook County for first degree murder on an accountability theory. The State's evidence at trial was essentially as follows. On January 17, 1990, at approximately 9:30 p.m., defendant, Raphael Padilla, and James Kallenborn, all members of the Satan Disciples street gang, discussed "putting a hit" on a member of the Vice Lords, a rival

gang, in retaliation for a previous shooting incident between the two gangs. Later that evening, shortly before 10 p.m., the three men were walking along 63rd Street toward Artesian Avenue when they saw the victim, Alvin Gill, in front of a residence located on Artesian. Defendant, Padilla, and Kallenborn believed that the victim was a member of the Vice Lords because the bill of the victim's cap was positioned off to the left, indicating to them that he was a member of a rival gang.

Upon seeing the victim, Padilla pulled out a gun and fired a shot at the victim. In response, the victim turned to one side and ran eastbound into an alley. Defendant, Padilla, and Kallenborn chased the victim into the alley, where the victim was shot again. The victim died from gunshot wounds inflicted by Padilla.

The trial judge's absence in this case occurred as testimony was being elicited from Assistant State's Attorney Michael Vittori. During the State's direct examination of Vittori, Vittori read into evidence a handwritten statement taken by him from defendant wherein defendant describes, in detail, his involvement in the victim's murder. Shortly after defendant's attorney began his cross-examination of Vittori, the trial judge briefly excused himself from the courtroom. On this matter, the record reveals that the following occurred:

"THE COURT: Excuse me, Mr. Flanagan [defense counsel]. I have Judge Brady on the phone. You can continue. If you need me, let me know. (Judge exited.)

MR. FLANAGAN: Q. Now, your job as a State's Attorney is to prosecute for the People of the State of Illinois, is that correct?

A. That is correct.

Q. And that is what you were doing January 18th of 1990, isn't that right?

A. I was a prosecutor at that time, yes.

Q. And you were working in Felony Review?

A. That is correct.

Q. And I believe you told the ladies and gentlemen of

the jury that when you work Felony Review you assist in the investigation of cases, isn't that right?

A. Yes.

Q. And you gather evidence?

A. Yes. We talk to witnesses, we talk to defendants if they are willing to talk with us.

Q. And the purpose of that is ultimately to be used in court, isn't that right?

A. Yes.

Q. That is what you told [defendant] when you spoke to him on January 18th, isn't that right, anything that he'd say would be used in court, didn't you tell him that?

A. That['s] right. I did inform him of, yes.

Q. And that is part of your job, isn't it?

A. Yes.

Q. So when you were talking to [defendant] you were acting as an attorney for the State of Illinois and not as his attorney?

A. Yes. That is what I told him.

Q. And your job as a State's Attorney was to gather evidence to prosecute [defendant], isn't that right?

A. No. We gather information—

MS. RODI [prosecutor]: Objection.

MR. FLANAGAN: Miss Court Reporter, could you make a note of where that is and then I can continue along another line.

Any objection counsel?

MS. RODI: No.

MR. FLANAGAN: Q. Now, in January of this year how long had you been working as a State's Attorney?

A. In January of 1990 I had been working, it wasn't four years yet because I started in June of 1986.

(Judge entered.)

MR. FLANAGAN: Judge, we did have an objection and it was one question ago. Maybe we could go back to that question. I would respectfully ask for your ruling.

THE COURT: You ask for what?

MR. FLANAGAN: Your ruling.

THE COURT: Well, what is the question?

MR. FLANAGAN: If the court reporter can read it back?

THE COURT: All right.
(The Court Reporter read the record.)
And there was an objection to that?
MR. FLANAGAN: Yes.
THE COURT: Overruled. He may answer."

After Vittori's testimony, the State rested its case in chief. The defense rested without presenting any evidence. Following closing arguments, the jury found defendant guilty of first degree murder. The court subsequently sentenced defendant to serve a term of 35 years' imprisonment.

Defendant sought review of his conviction in the appellate court arguing, *inter alia*, that the trial judge's absence during a portion of the cross-examination of Vittori was plain error which mandated a reversal of his conviction. The appellate court held that the trial judge's absence was error, but determined that the error was harmless. 271 Ill. App. 3d at 341. We subsequently granted defendant's petition for leave to appeal. 155 Ill. 2d R. 315.

## Analysis

The sole issue which defendant asks us to review is the correctness of the appellate court's conclusion that the trial judge's absence during Vittori's cross-examination was harmless error. Defendant's position on this issue is twofold. Defendant contends that a trial judge's absence during the presentation of evidence at a felony criminal jury trial constitutes *per se* reversible error. In the alternative, defendant argues that even assuming that such absence does not amount to *per se* reversible error, reversal is still warranted because a trial judge's absence is error and, in the present case, defendant suffered prejudice from that error.

Defendant's contention that the trial judge's absence in this case constitutes *per se* reversible error is based in large part on the defendant's theory that a trial judge's

presence throughout the trial is necessary to preserve the integrity and reputation of the judicial process. Defendant argues that the judge's presence is required to prevent inattentiveness on the part of jurors, improper conduct by the attorneys, and general disorderliness in the courtroom during a criminal jury trial, which have the potential of prejudicing defendant. Defendant further maintains that jurors expect that a judge will always be present during the course of the proceedings and that the judge's absence may cause jurors to believe that evidence presented during the judge's absence is, in the judge's opinion, of lesser importance.

Defendant contends that even if the absence of the trial judge did not constitute *per se* reversible error, defendant's conviction should be reversed because Vittori "was the single most important witness in this case, for he testified to a statement supposedly made to him by [defendant], and the State's claim of accountability rested primarily on this statement." Defendant argues that the judge's decision to leave the courtroom in order to take a phone call during the cross-examination of Vittori prejudiced defendant by creating the impression that the judge did not consider the cross-examination to be significant. Defendant also claims that any inattention or distraction by the jurors which might have been caused by the judge's absence during the cross-examination of this critical witness was likely to prejudice defendant.

The State initially counters that defendant has waived review of the trial judge's absence. The State points out that defendant did not object to the judge's absence at trial but instead proceeded, in the trial judge's absence, to continue with the cross-examination of Vittori. The State also points out that defendant did not raise an objection to the trial judge's absence in a post-trial motion. The State argues that these inactions,

either individually or collectively, are sufficient to preclude our review of defendant's challenge to the trial judge's absence.

In the alternative, the State contends that even if defendant's objection to the trial judge's absence in the instant case is reviewable, the appellate court correctly held that such absence did not amount to reversible error. The State disagrees with defendant's position that the trial judge's absence constitutes *per se* reversible error in the present case. Instead, the State argues that the appellate court correctly interpreted the decisions of this court to conclude that a trial judge's absence during a portion of a criminal jury trial, without a showing of prejudice to defendant, is harmless error. The State maintains that, in the present case, the trial judge's absence from the bench was harmless error because defendant was actively proceeding with the cross-examination of Vittori in the trial judge's absence, the trial judge was in effective control of the proceedings during his absence from the bench, and nothing prejudicial to defendant happened during the judge's absence from the bench. The State maintains that considering the judge's absence in this light, the trial judge's absence in the instant case was harmless error.

We begin our analysis by noting that the State is correct in its assertion that any error arising from defendant's failure to object to the trial judge's absence would generally be considered waived. Ordinarily, a defendant must object to alleged errors at trial and include the objection in a post-trial motion in order to preserve the issue for appellate review. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). In this case, defendant did not object to the judge's absence either at trial or in a post-trial motion and, as a result, review of such absence would normally be deemed waived.

The waiver doctrine, however, is not absolute.

Supreme Court Rule 615(a) provides that plain errors affecting substantial rights may be reviewed on appeal, though not objected to at trial and in a post-trial motion. 134 Ill. 2d R. 615(a). The purpose of the plain error rule is to afford certain protections to the accused by correcting serious injustices and to preserve the integrity and reputation of the judicial process. See *People v. Young*, 128 Ill. 2d 1, 46 (1989). This court has observed that the plain error rule may be invoked in criminal cases in two limited circumstances. See *People v. Hobley*, 159 Ill. 2d 272, 310 (1994); *People v. Herrett*, 137 Ill. 2d 195, 209 (1990); *Young*, 128 Ill. 2d at 47; *People v. Carlson*, 79 Ill. 2d 564, 576-77 (1980). First, where the evidence is closely balanced, a reviewing court may consider a claimed error which was not properly preserved, so as to preclude argument that an innocent person may have been wrongly convicted. See *Hobley*, 159 Ill. 2d at 310; *Herrett*, 137 Ill. 2d at 209; *Young*, 128 Ill. 2d at 47; *Carlson*, 79 Ill. 2d at 576. Second, a reviewing court may invoke the plain error rule to review waived errors which are of such magnitude that there is a substantial risk that the accused was denied a fair and impartial trial, and remedying the errors is necessary to preserve the integrity of the judicial process. See *Hobley*, 159 Ill. 2d at 310; *Herrett*, 137 Ill. 2d at 214; *Young*, 128 Ill. 2d at 47; *Carlson*, 79 Ill. 2d at 576-77.

Although the evidence in the case *sub judice* is not closely balanced, we believe that the second prong of the plain error rule should be invoked to review the judge's absence from the bench. The plain error rule permits a reviewing court "to take notice of errors appearing upon the record which deprive the accused of substantial means of enjoying a fair and impartial trial." *People v. Howell*, 60 Ill. 2d 117, 121 (1975); see also *People v. Sanders*, 99 Ill. 2d 262, 273 (1983); *People v. Pickett*, 54 Ill. 2d 280, 283 (1973). A reviewing court

will grant relief under the second prong of the plain error rule only if the error is so fundamental to the integrity of the judicial process that the trial court could not cure the error by sustaining an objection or instructing the jury to disregard the error. See *Herrett*, 137 Ill. 2d at 215; *Carlson*, 79 Ill. 2d at 577.

In our view, two policy concerns support the conclusion that the judge's absence from the bench in the present case is reviewable under the plain error rule. First, a judge's active presence on the bench during a criminal jury trial is an essential safeguard which aids in providing a defendant with a fair trial. Second, we believe that a judge's absence from the bench might unduly influence the attitude of jurors so as to deny defendant an impartial trial. We discuss each of these points in turn.

During a criminal jury trial, a necessary function of the trial judge is to supervise the courtroom, rule on objections as they arise during the course of the proceedings, and deter any objectionable conduct to the detriment of the defendant. In this regard, a trial judge's active presence on the bench helps to ensure that the defendant will have a fair trial. This court has observed that without the trial judge's presence in the courtroom, there is no judicial authority which can observe, cure, and deter objectionable conduct which may have the effect of prejudicing the defendant in the minds of the jury. See *People v. Chrfrikas*, 295 Ill. 222, 228-29 (1920). In *Chrfrikas*, while the trial judge was out of the courtroom, the prosecutor referred to a well-known atrocious crime of that era. This court concluded that the reference was likely to inflame the passions and prejudices of the jury to the detriment of defendant. In reversing defendant's conviction and ordering a new trial, this court observed that a trial judge's presence during the proceedings is necessary to ensure that defendant

receives a fair trial. The court noted that "[t]he trial judge should not be even temporarily absent from the court room while the trial of a case proceeds" because " '[i]t is the duty of the court, on its own motion, to promptly suppress any attempt on the part of counsel to drag irrelevant matters into a case merely for the purpose of exciting the prejudices of the jury.' " *Chrfrikas*, 295 Ill. at 228, quoting *Earll v. People*, 99 Ill. 123, 136 (1881). This court stated:

> "Even though the trial judge was within hearing of what was going on in the court room, he could not promptly have stopped the remarks of the prosecuting attorney on his own motion. It would be necessary first for him to return to the court room. *** The fact that the statement of the prosecutor was stricken out, on motion, after the judge returned to the court room could not take from the minds of the jurors the effect of the speech any more than the placing of a blotter upon an ink blot could remove entirely the effects of the blot of ink from a clean white sheet." *Chrfrikas*, 295 Ill. at 228-29.

A judge's absence from the bench during the course of the trial may create a negative impression in the minds of the jury to the detriment of the defendant. This court has explained that "[j]urors are ever watchful of the attitude of the trial judge and his influence upon them is necessarily and properly of great weight, thus his lightest word or intimation is received with deference and may prove controlling." *People v. Marino*, 414 Ill. 445, 450-51 (1953); see also *People v. Sprinkle*, 27 Ill. 2d 398, 403 (1963). In *Durden v. People*, 192 Ill. 493, 508 (1901), the trial judge, after presiding over the trial up to and including a portion of defense counsel's closing argument, absented himself from the proceedings and did not return until the hearing on the motion for a new trial. Without prior notice to the parties, another judge presided over the proceedings during the interim period. See *Durden*, 192 Ill. at 508. In holding that the presiding judge's absence from the proceedings required

an automatic reversal of defendant's conviction, this court in *Durden* observed that because a single judge had presided over the most of the trial, that judge's absence may have created a negative impression in the minds of the jurors:

> "It is impossible for us to say that no injury resulted to [defendant] from the substitution, in the manner hereto-fore indicated, of one judge for another during the trial of the cause. *** It cannot be known what impression this change may have made upon the minds of the jury to the prejudice of [defendant]." *Durden*, 192 Ill. at 507.

We are of the view that just as an unwarranted substitution of judges after most of the trial has transpired has the potential of affecting the jury's impartiality to the detriment of the defendant, the sudden absence of the trial judge in the present case had similar potency. In this case, the presiding trial judge totally absented himself from the proceedings during the testimony of the final witness in defendant's trial. As in *Durden*, we cannot say that the presiding judge's sudden absence did not affect the impartiality of the jurors and thereby result in prejudice to defendant. Therefore, we are persuaded that the presiding trial judge's total absence from a portion of the proceedings during defendant's murder trial must be viewed as so detrimental to the integrity and reputation of the judicial process as to constitute plain error and require reversal for a new trial.

We have set forth above the policy reasons why we view the trial judge's absence from the bench during defendant's prosecution as plain error requiring relaxation of the waiver doctrine. For similar reasons of policy we also hold that the nature of the error—total judicial absence for a portion of a felony trial—is *per se* reversible because such error is inherently prejudicial, not only to defendant's right to a fair trial but also to the integrity of the judicial process.

The appellate court relied on precedent from this court in support of its conclusion that error arising from the judge's absence from the courtroom should be subject to harmless error analysis requiring a specific showing of prejudice to defendant. Accordingly, we examine the prior cases of this court, dating back to the nineteenth century, which have considered issues involving judges' absences from court proceedings.

In reaching its conclusion that the trial judge's absence in the present case was harmless error, the appellate court stated that "in each case where the supreme court has had occasion to address the issue of a judge's absence from the bench, the court, while specifically disapproving of the practice, has reversed only where the defendant suffered prejudice as a result of the judge's absence." 271 Ill. App. 3d at 341. The appellate court concluded that the trial judge's absence during Vittori's cross-examination in the case at bar was harmless error because, in its view, defendant suffered no demonstrable prejudice resulting from the judge's absence.

We disagree with the appellate court's holding that Illinois precedent compels the conclusion that the trial judge's absence during a portion of defense counsel's cross-examination of Vittori amounted to harmless error. The appellate court misinterpreted this court's decisions in *Meredeth v. People*, 84 Ill. 479, 482-83 (1877), *Thompson v. People*, 144 Ill. 378, 381 (1893), and *Schintz v. People*, 178 Ill. 320, 326 (1899), as having established a harmless error standard by which to measure the legal effect of a trial judge's absence from the bench.

In *Meredeth*, this court held that a judge's absence from a murder trial during two successive days of closing argument was so fundamentally irregular and improper as to warrant automatic reversal of defendant's conviction, notwithstanding evidence indicating

that the judge's absence was by consent of defense counsel. *Meredeth* declined to view the judge's absence during closing argument as harmless because "[i]f [the judge] could be absent during any part of the trial \*\*\* on the same principle his absence during the entire trial might be justified." *Meredeth*, 84 Ill. at 482. Significantly, the *Meredeth* court did not base its reasoning on facts which indicated that serious misconduct had occurred during the trial judge's absence; on the contrary, the *Meredeth* opinion expressly stated that "whether or not [defendant was prejudiced], the absence of the judge from the court room \*\*\* *can not be justified on any principle or for any cause.*" (Emphasis added.) *Meredeth*, 84 Ill. at 482. It is evident that *Meredeth* cannot fairly be read as approving a harmless error standard of review for a judge's absence during trial.

Subsequently, in *Thompson*, this court again reversed a conviction because of the judge's absence, and reiterated as conclusive the rule announced in *Meredeth*, that "the presence of the judge during the argument of a criminal case could not even be dispensed with by consent of the parties." *Thompson*, 144 Ill. at 381. In *Thompson*, the trial judge remained in his chambers during the entirety of the State's closing argument to the jury and did not hear the argument during his absence from the bench. After holding that the judge's inability to hear the closing argument required reversal as a matter of law, the *Thompson* court remarked in passing that "[h]ad the judge stepped out of the court-room into his private room for a short time, where he could still hear the argument and where he would have been in a position to pass upon any question which might properly arise in the argument, we are not prepared to say that an error would have occurred." *Thompson*, 144 Ill. at 381-82.

The quoted *dictum* from *Thompson* may be reason-

ably interpreted as excusing a judge's brief absence from the bench if the judge is constructively present, *i.e.*, close enough to hear the proceedings and rule on objections. Indeed, in the subsequent decision in *Schintz*, this court adopted such an approach. In *Schintz*, the trial judge remained in his chambers, a room adjacent to the courtroom, during most of defense counsel's argument to the jury. The judge, however, left the door to his chambers open and actually listened to defense counsel's argument while he was physically absent from the bench. Relying on the quote from *Thompson*, *Schintz* held that the judge's absence from the bench in the case before it was harmless error because "[t]he judge was within hearing and no questions were raised to be passed upon by the judge." *Schintz*, 178 Ill. at 326. Thus, in *Schintz*, this court applied *Thompson*'s differentiation between the *per se* reversible error caused by a complete abdication of judicial presence from the proceedings and the lesser degree of harm resulting where a judge is physically absent from the courtroom but is nonetheless nearby and listening to the proceedings from an anteroom. See also *People v. Bolton*, 324 Ill. 322, 330 (1927); *Quigg v. People*, 211 Ill. 17, 23 (1904). The harmless error approach of *Schintz* may be understood as a practical concession to the reality that a trial judge is not truly absent, and may in fact be constructively present, when he or she is off the bench but able to listen and participate in proceedings from a nearby anteroom. *Cf. Chrfrikas*, 295 Ill. at 228 (even though judge was within hearing of courtroom proceedings, he could not promptly have stopped the prejudicial remarks of the prosecutor). We note that *Schintz*, *Bolton*, and *Quigg* do not address how the jurors might be affected by the judge's physical absence from the courtroom notwithstanding the judge's nearby presence in another room.

In the case at bar, the trial judge was completely

absent for a portion of the trial proceedings and therefore the "constructive presence" approach of *Schintz* has no application. Nor do we find persuasive other cases, decided after *Schintz*, in which a harmless error standard of review was employed to excuse errors involving judicial absence. For example, in *People v. Berkowitz*, 369 Ill. 197, 203 (1938), a majority of this court held that the trial judge's error in leaving his courtroom did not require reversal because such error was subsumed in the face of overwhelming evidence of defendant's guilt. The analysis of the court in *Berkowitz* signalled a departure from the prior harmless error cases involving judicial absence because *Berkowitz* minimized the policy implications of judicial absence and instead relied almost exclusively on what it characterized as overwhelming evidence of defendant's guilt. We disagree with the *Berkowitz* approach to errors involving judicial absence. If such errors could never be held reversible as long as evidence of defendant's guilt is deemed overwhelming, there would be little need for courts of review to concern themselves with the fairness of prosecutions and the integrity of the judicial process. We decline to follow the aberrant precedent of *Berkowitz*.

We reaffirm the view of *Meredeth*, *Thompson*, and *Durden* that a presiding trial judge's total absence from the proceedings is *per se* reversible error because the judge's presence is vital to the preservation of the integrity of the justice system and the defendant's right to a fair trial. These cases decline to search for or require a defendant to demonstrate actual prejudice arising from the trial judge's disappearance during trial, but instead assume that such absence is inherently prejudicial. See, *e.g.*, *Meredeth*, 84 Ill. at 482 (parties' consent to judge's absence was unavailing; such absence could not be justified on any principle); *Thompson*, 144 Ill. at 382 (unavail-

ability of judge to rule on objections during closing argument in felony trial was error of sufficient magnitude to reverse for new trial; *Durden*, 192 Ill. at 497 (error arising from original judge's absence from end of trial "requires a reversal of the cause, and therefore we pass no opinion upon the facts"). In the case at bar, the presiding trial judge was not only physically absent from the courtroom during a portion of defense counsel's cross-examination of Vittori, but also did not hear the proceedings and was not in any position to rule on objections during his absence. Indeed, the record reveals that when the judge returned to the courtroom, defendant's attorney advised the judge that, during his absence, an objection had been raised to a question. In response, the judge asked for the question to be read back before making a ruling on the objection. This complete abdication of judicial presence from even a portion of defendant's jury trial renders the harmless error approach taken by *Schintz* inapposite. Accordingly, we hold that in the instant case, as in *Meredeth*, *Thompson*, and *Durden*, the presiding trial judge's complete absence from the proceedings during a portion of defendant's felony jury trial constitutes *per se* reversible error, which presumes prejudice, and, as such, warrants granting the defendant a new trial. Because prejudice is inherent when felony trials continue in the absence of the presiding judge, we regard any showing of demonstrable prejudice, or lack thereof, to defendant either resulting from, or during, the judge's absence as immaterial to the disposition of this issue.

We conclude that, because of the significant public and private interests involved in a criminal jury trial, a harmless error rule standard of reviewing a judge's complete absence from the bench is ill-advisable in felony cases. A defendant's liberty, as well as the State's interest in convicting the guilty, are at stake in every

criminal trial. A presiding judge's supervision over every stage of the proceedings precludes speculation that jurors may perceive evidence received in the judge's absence as less significant, and impresses upon jurors the importance of the interests of the State and the defendant. A rule that a trial judge's absence from the proceedings is harmless would open the door to abuses which could hinder those interests and undermine public confidence in judicial proceedings. In our view, only a rule which requires reversal when a judge totally absents himself or herself from the proceedings will effectively remove any incentive which might otherwise exist for the judge to disregard the significant interests involved in a criminal trial. Therefore, we join hands with this court's prior decisions which have observed that "the presence of the judge can not be dispensed with." *Thompson*, 144 Ill. at 381.

For the foregoing reasons, the judgments of the circuit and appellate courts are reversed and this cause is remanded to the circuit court for a new trial.

*Appellate court judgment reversed;*
*circuit court judgment reversed;*
*cause remanded.*

CHIEF JUSTICE BILANDIC, dissenting:

I agree that it is error for a trial judge to leave the bench during a felony trial without first calling a recess. I cannot agree, however, with the majority's adoption of a rule which makes such an error *per se* reversible. In my view, reversal in this situation should be predicated on whether the defendant was prejudiced by the trial judge's absence. I would find in this case that the trial judge's absence from the bench caused no prejudice to the defendant and does not require reversal of his conviction.

The majority concludes that a rule of *per se* reversal is required by this court's prior precedent. To the con-

trary, this court's precedent clearly supports a rule that requires reversal only where the defendant has been prejudiced as a result of the judge's absence.

In *People v. Berkowitz*, 369 Ill. 197 (1938), this court was called upon to determine whether a trial judge's absence required reversal of the defendant's conviction. In *Berkowitz*, during the prosecution's closing argument, the trial judge left the bench and went into his chambers to prepare jury instructions. While the judge was absent, the prosecutor made comments that the defendant claimed were prejudicial because they implicitly referred to the defendant's failure to testify. Upon the judge's return to the court room, defense counsel raised an objection to the improper argument. The judge, after instructing the court reporter to read back the objected-to remarks, sustained the objection and cautioned the jury to disregard the remarks. *Berkowitz*, 369 Ill. at 203.

On appeal, the defendant argued that the trial judge's absence required reversal of his conviction. This court agreed that the judge's temporary absence was error, but went on to evaluate the record to determine if the defendant was prejudiced by the absence. Finding no prejudice, this court held that reversal of the defendant's conviction was not warranted. *Berkowitz*, 369 Ill. at 203-05; see also *People v. Bolton*, 324 Ill. 322 (1927) (reversal not required where the trial judge was absent during part of jury *voir dire* and part of closing arguments but was nearby and was available to rule upon objections and other matters).

The majority acknowledges the *Berkowitz* decision, but labels it "aberrant precedent" and declines to follow it. When this court's prior precedent is objectively reviewed, however, it is apparent that *Berkowitz* may not be so easily disregarded. *Berkowitz* did not represent a dramatic change in this court's precedent. This

court in earlier cases had conducted prejudice evaluations when determining whether a trial judge's absence required reversal. See *Bolton*, 324 Ill. 322; *Schintz v. People*, 178 Ill. 320, 325-26 (1899). Even the three cases relied upon by the majority, *Meredeth v. People*, 84 Ill. 479 (1877), *Thompson v. People*, 144 Ill. 378 (1893), and *Durden v. People*, 192 Ill. 493 (1901), support the proposition that reversal is not automatic where a trial judge is temporarily absent from the bench and that the circumstances of the absence should be considered in deciding whether to reverse. A review of each of those cases reveals that reversal was required because the defendant had been prejudiced by the judge's absence.

In *Meredeth*, the trial judge was absent from the bench for almost two days during arguments in the defendant's murder trial, and the judge's place on the bench was occupied successively by two members of the bar. More importantly, order was not maintained in the courtroom. Specifically, the record showed that, during the trial, no bullet had been found in the body of the victim and defendant's counsel based his argument on that fact. After the defense argument concluded, and while the trial judge was absent, a bystander in the courtroom discovered what appeared to be a bullet in a piece of the victim's skull. It was established that, during the judge's absence:

> "evidence [was] allowed to be handled in the sight and nearly in the hearing of the jury, and that, when the shot was discovered in the skull, it was seized by the spectators, and passed from one excited group to another, and the party making the affidavit states he 'believes that their words, eyes, conversations and excited gesticulations exercised a great influence on the jury.' " *Meredeth*, 84 Ill. at 481.

Reversal in *Meredeth* was thus warranted by the prejudice the defendant suffered as a result of the trial judge's absence from the proceedings.

Similarly, in *Thompson*, the circumstances of the trial judge's absence supported a finding that the defendant had been prejudiced by the absence. In that case, the trial judge left the bench during closing arguments, during which time repeated objections were made by the defense. As a result of the judge's absence, no rulings were ever obtained on these objections. This court determined that reversal of the defendant's conviction was warranted by the judge's absence. In reaching this holding, however, this court acknowledged that the circumstances of the judge's absence will dictate whether reversal is warranted. Specifically, the court noted that a different result might have been reached had the judge, during his absence, remained in a position to pass upon questions raised during the arguments. *Thompson*, 144 Ill. at 381-82. Thus, *Thompson*, like *Berkowitz*, supports the position that a judge's absence from trial will not always require reversal.

The third case relied upon by the majority, *Durden*, addressed a situation entirely different from that presented here. In *Durden*, the alleged error was not the absence of the trial judge, but the substitution of a new judge in the trial judge's place midway through the defendant's trial. In that case, the trial judge vacated the bench (and, in fact, the county) during the defendant's trial and took no further part in the proceedings until the hearing on a motion for a new trial. Another judge sat in the trial judge's place after the trial judge left the bench. On appeal, this court reversed the defendant's conviction, finding that the defendant was "entitled to the judgment of the judge, who has heard the evidence in the case, and conducted the trial thereof." *Durden*, 192 Ill. at 498. This court justified the reversal by noting that the new judge was required to determine what jury instructions would be given, even though that judge had not heard the evidence to which

the instructions were to be applied. Additional prejudice was demonstrated by the fact that, during the prosecutor's closing argument, a dispute arose between the parties as to the testimony of one of the witnesses, and the new judge was unable to determine what the testimony had been. *Durden*, 192 Ill. at 499. *Durden* is thus factually distinguishable from the instant case. Moreover, even if *Durden* were relevant here, the court in *Durden* clearly considered the prejudicial impact on the defendant in holding that reversal was required.

Accordingly, in each case the majority cites as support for its holding that reversal is required regardless of prejudice, there was prejudice to the defendant, and it was that prejudice which justified reversal of the defendant's conviction. Admittedly, some *dicta* in *Meredeth* could be read to suggest that the lack of prejudice would not preclude reversal. See *Meredeth*, 84 Ill. at 482. *Berkowitz*, however, post-dated *Meredeth* by 61 years. In *Berkowitz*, this court clarified that a trial judge's absence would not warrant reversal unless there was prejudice to the defendant.

In sum, the majority's attempt to justify a rule of *per se* reversal on the basis of this court's past precedent is unavailing. Our precedent shows that reversal is appropriate only where the defendant has been prejudiced. Moreover, I believe that predicating reversal on a finding of prejudice is the better reasoned approach. Where a trial judge is temporarily absent from the bench but the circumstances demonstrate that no prejudice accrued to the defendant, no justification exists for reversing the defendant's conviction and granting a new trial. The defendant has received a fair trial, and a new trial would unjustly reward the defendant and constitute an unnecessary waste of judicial resources. A scenario may easily be envisioned where a trial judge leaves the bench for only the slightest period of time, during which time

only the most inconsequential of proceedings take place. One such situation could arise, for instance, where, during the judge's absence, a witness is sworn and asked to state his or her name for the record. To suggest that a new trial is automatic in this scenario without any inquiry into whether the defendant was prejudiced by the judge's absence is absurd. Yet, the majority's rule, which deems prejudice to the defendant irrelevant, would seem to require such a holding.

I would therefore hold that a trial judge's temporary absence from a felony trial may be considered harmless error where the defendant has not been prejudiced by the absence. Applying this standard, I would find the error in this case to be harmless. The circumstances of the trial judge's absence here reveal that no prejudice to the defendant resulted. The trial judge's absence occurred during the defendant's cross-examination of the assistant State's Attorney who took the defendant's written confession. A total of 11 questions were asked of the witness during the judge's absence. The text of this questioning is set out in the majority opinion. All of the questions sought to determine the witness' job duties in the felony review unit of the State's Attorney's office and whether those duties included the gathering of evidence for criminal prosecutions. No objections were made by the State to any of the questions until the tenth question. The judge apparently returned to the courtroom moments later, after only one additional question had been asked. Upon his return, the judge immediately ruled on the objection, overruling it.

These facts show that the judge was not absent from the proceedings for a significant period of time. To the contrary, the judge was absent long enough only for 11 brief questions to be asked, which could not have been more than a few minutes. Also, the questions asked during the absence were merely background questions, and

did not go to the heart of the witness' testimony, *i.e.*, the defendant's confession and the circumstances surrounding it. Further, the trial judge remained nearby and was available to rule upon objections. In fact, the judge told the parties, "If you need me, let me know." Only one objection was made during the judge's absence and that objection was ruled upon one question later, pursuant to a procedure suggested by defense counsel.

It is also significant that defense counsel made no complaint about the judge's absence in the trial court nor otherwise made any record that anything prejudicial to the defendant had occurred during the judge's absence. Obviously, defense counsel did not consider the judge's absence to be a significant event. This circumstance should certainly be considered probative of whether anything occurred during the judge's absence that adversely affected the defendant's interests. Presumably, had the courtroom erupted into chaos during the judge's absence, defense counsel would have noted it for the record. Moreover, as the majority concedes, the evidence in this case was not closely balanced. 174 Ill. 2d at 363.

In conclusion, the circumstances present in this case demonstrate that the defendant was not prejudiced by the trial judge's brief absence. I would therefore affirm the defendant's conviction.

For the foregoing reasons, I respectfully dissent.

JUSTICE NICKELS joins in this dissent.