# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Radcliff*, 2011 IL App (1st) 091400

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERIC RADCLIFF, Defendant-Appellant. |
| District & No. | First District,  Fourth Division<br>Docket No. 1–09–1400 |
| Filed | June 23, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction was reversed and his sentence was vacated for possession of a stolen motor vehicle and the cause was remanded for a new trial where the presiding judge left the courtroom without calling a recess and allowed the cross-examination of a witness to continue while he was absent, since the Illinois Supreme Court established a bright-line rule in *Vargas* that only a rule that requires reversal when a judge totally absents himself or herself from the proceedings will effectively remove any incentive that might otherwise exist for the judge to disregard the significant interests involved in a criminal trial. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09–CR–4166; the Hon. Vincent M. Gaughan, Judge, presiding. |
| Judgment | Reversed and remanded. |

| | |
|---|---|
| Counsel on Appeal | Michael J. Pelletier, Patricia Unsinn, and Daniel T. Mallon, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Miles J. Keleher, and Jeremiah R. Davis, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE STERBA[1] delivered the judgment of the court, with opinion. Justices Neville and Salone[2] concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a jury trial, defendant Eric Radcliff was found guilty of possession of a stolen motor vehicle and burglary, and judgment was entered only on the charge of possession of a stolen motor vehicle, on which he was sentenced to nine years in prison. On appeal, Radcliff contends that his conviction should be reversed and the cause remanded for a new trial because the judge was absent from the bench while defense counsel cross-examined a State witness and the court failed to question prospective jurors in compliance with Illinois Supreme Court Rule 431(b) (eff. May 1, 2007). Radcliff also challenges the fines and fees order entered against him. Because the circuit court's admonitions to potential jurors did not comply with Rule 431(b), this court reversed Radcliff's conviction and sentence and remanded for a new trial in a Rule 23 order filed August 5, 2010 (*People v. Radcliff*, No. 1–09–1400 (2010) (unpublished order under Supreme Court Rule 23)). On January 26, 2011, the Illinois Supreme Court issued a supervisory order directing this court to vacate its order and reconsider in light of *People v. Thompson*, 238 Ill. 2d 598 (2010). *People v. Radcliff*, 239 Ill. 2d 577, 578 (2011). For the reasons that follow, we reverse Radcliff's conviction and sentence.

¶ 2                                     BACKGROUND

_____

[1] Pursuant to Justice Gallagher's retirement, Justice Sterba delivered the judgment of the court, with opinion, in the reconsideration of this case. Justice Sterba has reviewed all relevant materials, including the original Rule 23 order filed on August 5, 2010, and the supervisory order issued by our supreme court on January 26, 2011.

[2] Pursuant to Justice O'Brien's retirement, Justice Salone has participated in the reconsideration of this case. Justice Salone has reviewed all relevant materials, including the original Rule 23 order filed on August 5, 2010, and the supervisory order issued by our supreme court on January 26, 2011.

¶ 3       At trial, Chicago police officer Michael Coughlin testified that on February 6, 2009, he was working with a group of officers as part of a covert auto theft team that had planned to place a bait vehicle in an area of high auto thefts to curb such thefts in that area. The bait vehicle was equipped with window and trunk sensors, internal cameras and microphones, a computer system that could lock the doors and ignition, and a GPS system. About 8:45 p.m., Officer Coughlin drove the bait vehicle, a silver 2006 Mercury Milan, in an erratic manner to give the impression that he was inebriated. Officers Delcason and Salvador followed Officer Coughlin in a marked squad car, activated their lights and siren, and curbed the bait vehicle at the intersection of 63rd and Carpenter on the south side of Chicago.

¶ 4       At this point, Officer Coughlin saw approximately six individuals standing on a nearby corner, including Radcliff. Officers Dalcason and Salvador then pretended to arrest Officer Coughlin, who acted belligerent and caused a scene, and handcuffed him and took him into custody while leaving the bait vehicle on the street. When the officers left the vehicle, the keys were on the center console, the doors were unlocked, and the front driver and passenger side windows were halfway open. Officer Coughlin was then taken to the intersection of 61st and Morgan, where he joined Officer Sheetz.

¶ 5       Officer Don Cornelious testified that on the night of February 6, 2009, he was acting as the surveillance officer for the covert auto theft team. Officer Cornelious set up a point of surveillance at 63rd and Carpenter and remained in radio contact with the other team members. From his surveillance point, Officer Cornelious observed Radcliff standing across the street from the bait vehicle in a group of approximately six people. Radcliff walked to the vehicle, leaned inside, and fumbled around for about a minute before returning to the group. Shortly thereafter, Radcliff returned to the vehicle and unsuccessfully attempted to open the trunk, then returned to the group. About 15 minutes later, Radcliff entered and started the vehicle, then drove away.

¶ 6       During cross-examination, defense counsel questioned Officer Cornelious regarding the contents of the vehicle theft case report of the incident, and he stated that he could not remember "word for word" what was in the report. Defense counsel asked Officer Cornelious if anything would refresh his recollection, and he responded that the report would. At this point, the judge presiding over the trial said "[c]ounsel, excuse me, you can show him the report. One thing I have to take care of." The judge then left the bench. While the judge was away, defense counsel asked Officer Cornelious if he remembered what the incident report he was using to refresh his recollection was about, and if it was from the date of the incident, and Officer Cornelious responded that it was from that day. Defense counsel then said "[w]hy don't you take a look at it until the judge gets back." Defense counsel resumed questioning Officer Cornelious after the judge returned to the bench.

¶ 7       Sergeant James Kolodziej testified that his role in the covert operation was to sit in an unmarked car with a laptop computer that controlled the bait vehicle. Once the bait vehicle was in position, Sergeant Kolodziej activated the system that would "arm" the vehicle. Once the vehicle was armed, messages would be sent to the computer about what was happening with the vehicle. Sergeant Kolodziej received a message that a door had been opened, but the vehicle remained in the same location. About 15 minutes later, he received another message that a door had been opened. He then received a "door closed" message, followed by an

"ignition on" message. Using the GPS tracking system, Sergeant Kolodziej saw that the bait vehicle turned north on Aberdeen. He notified Officers Coughlin, Sheetz, Dalcason and Salvador of the vehicle's location. Once the officers communicated to Sergeant Kolodziej that they were in position to stop the vehicle, he sent a command to shut off the ignition and disable the vehicle. Radcliff was the only person in the vehicle, and Officer Coughlin placed him under arrest.

¶ 8        Radcliff testified that about 8:40 p.m. on February 6, 2009, he stopped at a liquor store at 62nd and Carpenter on his way from his sister's house to his girlfriend's house. Radcliff had planned on taking a bus from the liquor store to his girlfriend's house and encountered his friend Kenny outside of the liquor store. Kenny asked Radcliff if he needed a ride somewhere and offered him the use of a car so long as he returned it. Kenny handed Radcliff a set of keys for a car parked across the street, and Radcliff entered the car and drove away until he was stopped by police. Radcliff explained that he had planned on returning the vehicle when he had finished using it.

¶ 9        The State called Officer Richard Salvador in rebuttal, who was part of the covert auto theft team, and corroborated the testimony of the other officers regarding the incident and Radcliff's arrest. The State also recalled Officer Coughlin, who testified that he conducted an interview with Radcliff at the police station about 9:30 p.m. on February 6, 2009, during which Radcliff stated that Kenny told him that the police had locked up a white male and left the keys in the car, and then gave him the keys in exchange for a beer.

¶ 10        The jury found Radcliff guilty of possession of a stolen motor vehicle and burglary. The circuit court entered judgment only on the count of possession of a stolen motor vehicle and sentenced Radcliff to nine years in prison.

¶ 11                                ANALYSIS

¶ 12        We first address Radcliff's contention that this court must reverse his conviction and remand for a new trial because the circuit court's admonitions to the prospective jurors did not comply with Rule 431(b). Our review of the interpretation of a supreme court rule is *de novo*. *People v. Suarez*, 224 Ill. 2d 37, 41-42 (2007).

¶ 13        In *People v. Zehr*, 103 Ill. 2d 472, 477 (1984), our supreme court held that it was essential to the qualification of jurors in a criminal case that they know that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him. Rule 431(b) codifies the court's holding in *Zehr*, and the version of the rule that was in effect when Radcliff's trial occurred provided:

        "(b) The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure

-4-

to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b).

¶ 14    In this case, prior to swearing in the prospective jurors, the court admonished the group in the following manner:

"Under the law, a defendant is presumed to be innocent of the charges against him, and this presumption remains with him throughout every stage of the trial and during your deliberations on the verdict and is not overcome unless from all of the evidence in this case you are convinced beyond a reasonable doubt that the defendant is guilty.

The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the entire trial.

The defendant is not required to prove his innocence, nor is he required to present any evidence on his own behalf. He may rely on the presumption of innocence."

¶ 15    The court further admonished the group:

"If [defendant] decides not to testify in his own behalf, you can't use any inference in that to say well, if he was innocent, why wouldn't he testify in his own behalf?

As soon as I say that, that thought is going to be in your head. But that's not bad. What you do, if it does pop out in your head, you just put it out of the way. You cannot consider the fact that if [defendant] decides not to testify as any evidence of anything against him. All right.

Does anybody have any qualms with that principle? If you do, raise your right hand or raise any hand. I don't care.

All right. Let the record reflect nobody has raised their hand."

¶ 16    Radcliff asserts that although the court explained all four *Zehr* principles to the jurors, it failed to comply with Rule 431(b) because it did not ask the jurors whether they accepted and understood the first three principles. The State argues that Radcliff has forfeited this issue on appeal by failing to object to the court's error. Issues raised on appeal are preserved for review by objecting during trial and filing a written posttrial motion raising the alleged error (*People v. Enoch*, 122 Ill. 2d 176, 186 (1988)), and when a defendant does not object at trial to a subsequently claimed error, a plain error analysis is appropriate. See *People v. Herron*, 215 Ill. 2d 167, 181-82 (2005) (plain error applies when defendant fails to object, while harmless error applies when a timely objection is made).

¶ 17    The plain error doctrine allows errors not previously challenged to be considered on appeal if either: (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant; or (2) the error was so fundamental and of such magnitude that it affected the fairness of the trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007); *Herron*, 215 Ill. 2d at 177. However, before conducting a plain error analysis we

must determine whether an error in fact occurred. *People v. Sims*, 192 Ill. 2d 592, 621 (2000).

¶ 18 The circuit court asked potential jurors if they accepted the principle that a defendant's choice not to testify could not be held against him. The court did not question prospective jurors about the remaining three principles. In *Thompson*, our supreme court noted that the circuit court did not ask prospective jurors whether they understood and accepted the principle that the defendant is not required to present any evidence on his own behalf. *Thompson*, 238 Ill. 2d at 607. The court stated that this failure, by itself, constituted noncompliance with the rule. *Id.* However, the court went on to say that although the circuit court asked prospective jurors whether they understood the presumption of innocence, it did not ask whether they accepted that principle. Thus, the court concluded, this was an additional violation of the rule. *Id.*

¶ 19 Applying this reasoning to the case at bar, we conclude that the circuit court erred in failing to question prospective jurors about three of the four principles. Under *Thompson*, the court further erred in only asking potential jurors whether they accepted the principle that a defendant's choice not to testify cannot be held against him, without asking if they also understood that principle. Accordingly, we must now determine whether this was reversible error under the plain error doctrine.

¶ 20 In our original order, we held that the circuit court's failure to ask potential jurors if they understood and accepted three of the four principles was reversible error. *People v. Radcliff*, No. 1–09–1400, slip op. at 9 (2010) (unpublished order under Supreme Court Rule 23). We determined that under the second prong of the plain error analysis, Radcliff was denied his substantial right to a fair and impartial jury by the court's failure to comply with Rule 431(b). However, in *Thompson*, our supreme court observed that "[w]hile trial before a biased jury is structural error subject to automatic reversal, failure to comply with Rule 431(b) does not necessarily result in a biased jury." *Thompson*, 238 Ill. 2d at 610. Because there was no evidence that the defendant in *Thompson* was tried by a biased jury, the court held that the circuit court's error did not require reversal of the defendant's conviction. *Id.* at 611.

¶ 21 Here, there is no evidence that the circuit court's failure to comply with Rule 431(b) resulted in a biased jury, so the error is not reversible under the second prong. Radcliff did not argue that the evidence was closely balanced, nor does the record support such an argument. Thus, we conclude that the circuit court's failure to comply with Rule 431(b) was not reversible error.

¶ 22 Because we originally reversed Radcliff's conviction and remanded for a new trial, we did not address his argument that his conviction should be reversed because the judge left the bench during defense counsel's cross-examination of Officer Cornelious. We now address this issue. Relying on *People v. Vargas*, 174 Ill. 2d 355, 371 (1996), Radcliff argues that judicial absence from a portion of a defendant's felony trial is *per se* reversible error, because it is prejudicial to both a defendant's right to a fair trial and to the integrity of the judicial system. Whether the judge's absence deprived Radcliff of his due process right to a fair trial is a question of law which we review *de novo*. *People v. Graham*, 206 Ill. 2d 465, 474 (2003).

¶ 23 The State argues that Radcliff has forfeited this issue because he did not object at trial

or raise it in a posttrial motion. As discussed above, when a defendant does not object at trial to a subsequently claimed error, a plain error analysis is appropriate. See *Herron*, 215 Ill. 2d at 181-82. Under the second prong of the plain error doctrine, we will consider errors that are so fundamental and of such magnitude that the fairness of the trial and the integrity of the judicial process are called into question. *Piatkowski*, 225 Ill. 2d at 565; *Herron*, 215 Ill. 2d at 177. However, before conducting a plain error analysis we must first determine whether an error in fact occurred. *Sims*, 192 Ill. 2d at 621.

¶ 24 The State contends that if any error occurred, it was injected into the proceedings by defense counsel. The State claims that because the court specifically instructed counsel only to show the witness the report, defense counsel injected the error by continuing to question the witness in the judge's absence. Alternatively, the State argues that if any error occurred, it did not prejudice Radcliff in any manner. In *Vargas*, our supreme court determined that an error occurred when the presiding trial judge was completely absent from the courtroom during the cross-examination of a witness at a felony jury trial. *Vargas*, 174 Ill. 2d at 357. Here, the judge was completely absent from the proceedings during part of the cross-examination of a witness; thus, we conclude that an error occurred. We must next consider whether this error is reversible.

¶ 25 As an initial matter, we reject the State's contention that the court gave specific instructions and defense counsel injected the error into the proceedings by violating those instructions. During cross-examination of a witness, defense counsel asked the witness whether anything would refresh his recollection of the contents of the vehicle theft report related to the incident. The witness responded, "The report." The judge then interrupted the proceedings. He said: "Counsel, excuse me, you can show him the report. One thing I have to take care of." He then left the bench. In his absence, the following exchange occurred:

> "Q. I'm showing you Defendant's Exhibit 1 previously shown to counsel. Officer, do you remember what this report is about? Is that the incident report from that day?
>
> A. Yes. That's from that day.
>
> Q. Why don't you take a look at it until the judge gets back."

¶ 26 Contrary to the State's assertion, defense counsel was following the court's instructions. The court told defense counsel to show the witness the report. Defense counsel asked two questions to lay the foundation before showing the witness the report, and then deferred all other questioning until the judge returned to the bench. Moreover, the court confirmed that defense counsel complied with its order at a later point in the proceedings. During jury deliberations, a note was sent out with a request to see a portion of the transcripts from the trial. While the court and the attorneys were discussing the request, the following exchange occurred:

> "MR. VROUSTOURIS [Assistant State's Attorney]: Next one is page 82, Judge. There is, I'd just [*sic*] to bring to the Court's attention on line 8 the record reflects that your Honor left the courtroom and during that time there was a question and answer and a second question in your absence, Judge. We don't have an objection to that, but I just want to bring that to the Court's attention that the Court is aware, there was a question and answer in your absence.

THE COURT: *** All right. The question was, 'Was there anything that could refresh your recollection? Answer: The report. And then it's, The Court: Counsel, excuse me, you can show him the report. One thing I have to take care of.' And then Mr. Simmons [defense counsel] went on his own, but the questions are, and it's nothing but complying with the order is, 'I'm showing you Defendant's Exhibit 1 previously shown to counsel. Also do you remember what this report is about? Is this the incident report from that day? Answer: Yes, from that day. Question: Why don't you take a look at it until the Judge gets back.' And then the next salutation is the Judge returns.

So that's just compliance with my order that he could show him the report. Nobody has made any objections about this, correct?

MR. VROUSTOURIS: That's correct, Judge."

¶ 27    Thus, we conclude that defense counsel did not violate an order of the court and inject an error into the proceedings. As previously stated, the error occurred when the presiding trial judge completely absented himself from the courtroom during part of the cross-examination of a witness. We now turn to the State's alternative argument that the error did not prejudice Radcliff in any manner.

¶ 28    In *Vargas*, our supreme court considered the issue of whether a presiding trial judge's complete absence from the courtroom during the cross-examination of a witness at a felony jury trial constitutes *per se* reversible error or whether prejudice to the defendant must be shown. *Id*. In its analysis, the court explained that two important policy concerns supported its conclusion that the judge's absence from the bench was reviewable under the second prong of the plain error analysis. *Id*. at 364. "First, a judge's active presence on the bench during a criminal jury trial is an essential safeguard which aids in providing a defendant with a fair trial. Second, *** a judge's absence from the bench might unduly influence the attitude of jurors so as to deny defendant an impartial trial." *Id*. The court concluded that total judicial absence from a portion of a felony trial is *per se* reversible because such error is inherently prejudicial to both the defendant's right to a fair trial and the integrity of the judicial process. *Id*. at 366. The court further explained that "[b]ecause prejudice is inherent when felony trials continue in the absence of the presiding [trial] judge, we regard any showing of demonstrable prejudice, or lack thereof, to defendant either resulting from, or during, the judge's absence as immaterial to the disposition of this issue." *Id*. at 371.

¶ 29    Moreover, the court observed that a trial judge's presence in the courtroom is necessary because without it, "there is no judicial authority which can observe, cure, and deter objectionable conduct which may have the effect of prejudicing the defendant in the minds of the jury." *Id.* at 364. The court went on to discuss a case in which it noted that the circuit court has a duty to *sua sponte* suppress any attempt on the part of counsel to drag irrelevant matters into a case. *Id.* at 364-65 (discussing *People v. Chrfrikas*, 295 Ill. 222, 228-29 (1920)). We note that here, defense counsel did not lay the proper foundation to refresh the officer's recollection and also that, in this failed attempt to lay such a foundation, asked a compound question; something that could have been corrected if the judge had been present.

¶ 30    We recognize that in the case at bar, no substantive questions were asked of the witness

during the judge's brief absence. However, our supreme court established a bright line rule in *Vargas* and explained that "only a rule which requires reversal when a judge totally absents himself or herself from the proceedings will effectively remove any incentive which might otherwise exist for the judge to disregard the significant interests involved in a criminal trial." *Id*. at 372. The court further explained that "[a] presiding judge's supervision over every stage of the proceedings precludes speculation that jurors may perceive evidence received in the judge's absence as less significant, and impresses upon jurors the importance of the interests of the State and the defendant." *Id*. Thus, because the court did not call a recess and the cross-examination of a witness continued in the complete absence of the presiding trial judge, we hold that Radcliff's right to a fair trial was compromised.

¶ 31    Accordingly, we reverse Radcliff's conviction and sentence and remand for a new trial. Because we are reversing Radcliff's conviction, his challenges to the fines and fees order entered against him have been rendered moot.

¶ 32    Reversed and remanded.